FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS. 2005 FEB 16 P 3: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., NORMAN PELLETIER, MATTHEW O. BULLARD, SR., and DENNIS A. LEE on behalf of themselves and all others similarly situated, | ) ) ) ) | 05 cv 10317 MLW |
| | ) | JLA |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | Class Action |
| | ) | Demand for Jury Trial |
| UNITED VAN LINES, LLC., VANLINER INSURANCE COMPANY, AND UNIGROUP, INC. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

RECEIPT #
AMOUNT $ 250
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK.
DATE 2/16/05

## PLAINTIFFS' CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

The Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Norman Pelletier,

Matthew O. Bullard, Sr., and Dennis A. Lee bring this action seeking declaratory, injunctive, and

monetary relief on behalf of themselves and all others similarly situated against Defendants United

Van Lines, LLC. ("United"), Vanliner Insurance Company ("Vanliner") and UniGroup, Inc.

("UniGroup").

### NATURE OF THE ACTION

1.      This proceeding is brought as a class action pursuant to which Norman Pelletier,

Matthew O. Bullard, Sr., and Dennis A. Lee ("Named Plaintiffs"), and OOIDA, on behalf of

themselves and all similarly situated owner-operator drivers, challenge Defendants' conduct and

business practices under the federal Truth-in-Leasing regulations, 49 C.F.R. Part 376. Actions to

enforce the Truth-in-Leasing regulations are privately enforceable in federal court. 49 U.S.C.

§14704(a)(1),(2).

## JURISDICTION AND VENUE

2.      Jurisdiction of this matter is granted to this court by 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1337 (proceedings arising under an act of Congress regulating commerce).  The causes of action alleged arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transport of property in interstate and foreign commerce, including 49 U.S.C. §§ 14102 and 14704(a)(1) and (2), and 49 C.F.R. Part 376.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that United and Vanliner are authorized to conduct and regularly do conduct business in Massachusetts and many of the wrongs alleged in this complaint were perpetrated by Defendants acting alone or through their authorized agents in Massachusetts.

## PARTIES TO THE ACTION

4.      Plaintiff OOIDA is a non-profit trade association with a membership comprised of "owner-operators," other professional truckers and small fleet owners who own and operate heavy duty trucks.  OOIDA is incorporated in the State of Missouri and maintains its principal place of business in Grain Valley, Missouri.  OOIDA was founded in 1973 and now has over 120,000 members residing in all fifty states and Canada.  OOIDA brings this action in a representative capacity and seeks declaratory and injunctive relief on behalf of the proposed class of owner-operators, including those who are its members.

5.      Plaintiff Norman Pelletier, a New Hampshire resident, is an owner-operator that leased his motor vehicle, with himself as the driver, to H. Goldman, Inc. d/b/a Humboldt Storage and Moving of Canton, Massachusetts from May of 1997 through March of 2003.  Mr. Pelletier is a

member of OOIDA. Humboldt is an authorized local agent for Defendant United.

6.    Plaintiff Matthew O. Bullard, Sr., an Illinois resident, is an owner-operator who, between October, 2003, and December, 2004, leased his motor vehicle, with himself as a driver, to Suddath Relocation Systems of Pensacola, Inc. ("Suddath") of Pensacola, Florida. Suddath is a local agent of United with offices throughout the State of Florida and the nation. Mr. Bullard is a member of OOIDA.

7.    Plaintiff Dennis A. Lee, a North Carolina resident, is an owner-operator who leased his motor vehicle, with himself as a driver, to two separate local agents of United. Between November 4, 1998 and April 2003, Plaintiff Lee was a party to a lease agreement with United local agent McCollister's Moving & Storage, Inc. ("McCollister") of Burlington, New Jersey. Between about April, 2004 and December, 2004, Plaintiff Lee entered into a lease agreement with United's local agent Larson Moving & Storage Co., s/b/a Mohawk Moving & Storage, Inc. ("Mohawk") located in Blaine, Minnesota. Mr. Lee is a member of OOIDA.

8.    Defendant United is a wholly owned subsidiary of Defendant UniGroup. United is a federally regulated motor carrier that provides transportation of property in interstate commerce under authority of the U.S. Department of Transportation. United conducts its business on a nationwide basis through a network of nearly 500 local agents including 14 agents in the Commonwealth of Massachusetts. United is authorized to conduct business in Massachusetts. United, directly and through agents such as Humboldt, Suddath, McCollister and Mohawk moves freight in equipment leased from owner-operators including Plaintiffs Pelletier, Bullard and Lee and

3

others similarly situated.

9.    Defendant Vanliner Insurance Company (Vanliner) is a wholly-owned subsidiary of Vanliner Group, Inc. which in turn is a wholly-owned subsidiary of Defendant UniGroup. Vanliner is engaged in providing insurance for the moving industry. Vanliner is licensed to sell insurance in the Commonwealth of Massachusetts.

10.    Defendant UniGroup, Inc. (UniGroup), is a Missouri corporation located in Fenton, Missouri. UniGroup is owned and operated by local agents for Defendant United and Mayflower Transit, LLC (Mayflower)(another motor carrier). No shares of UniGroup may be acquired by anyone who is not an active local agent for either United or Mayflower. UniGroup's board of directors is comprised exclusively of local agents of United and Mayflower. All or substantially all of UniGroup's directors also serve as directors of Defendants United and Vanliner. Many of UniGroup's corporate officers also serve as corporate officers of Defendants United and Vanliner.

11.    Defendant UniGroup has had significant contacts within the Commonwealth of Massachusetts including direct communications with Massachusetts residents through advertisements and over the internet. Two of UniGroup's corporate directors reside in Massachusetts and, on information and belief, conduct business on behalf of UniGroup within the Commonwealth. David R. Harrison is a director of UniGroup and resides in or about Seekonk, Massachusetts. Thomas E. Andresen is a director of UniGroup and resides in or about Salem, Massachusetts. The website advertising T.E. Andresen, Inc. d/b/a Andresen Moving and Storage, boasts that "[a]s a stockholding agent for United Van Lines, Inc. . . we have been able to offer many

4

more services under the UniGroup, Inc. umbrella . . . such as . . . insurance options under Vanliner

Insurance to name a few." UniGroups' contacts within the Commonwealth of Massachusetts are

sufficient to justify the exercise of jurisdiction by this Court.

12.    Defendants, United, Vanliner and UniGroup, with their interlocking boards of

directors and corporate officers, and with their common ownership, are affiliated entities and operate

a seamless business enterprise. Many of the wrongs committed by Defendant United that are alleged

in this complaint are carried out on United's behalf by officers and employees of Defendants

UniGroup and Vanliner. United, as a regulated motor carrier, is responsible for the acts and

omissions of its affiliated companies in violation of the federal Truth-in-Leasing regulations.

## STATUTORY AND REGULATORY FRAMEWORK

13.    Under federal law and regulations, "authorized motor carriers" like United may

perform authorized transportation in equipment that they do not own *only* if the equipment is

covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12. *See* 49 C.F.R. §

376.11(a). The conduct and business practices of authorized motor carriers must also comply with

the Truth-in-Leasing regulations irrespective of whether or not their written lease agreements satisfy

the requirements of the regulations.  49 C.F.R. § 376.12.

14.    When a driver leases his equipment to an authorized motor carrier, the compensation

for his equipment and services must be "clearly stated on the face of the lease or in an addendum

which is attached to the lease." 49 C.F.R. § 376(12)(d).

15.    An owner-operator driver may not be required to purchase any products, equipment

5

or services from the authorized carrier as a condition of entering into the lease.  49 C.F.R.

§376.12(i).  By the same token, an authorized carrier may make deductions from a driver's

compensation for items initially paid for by the carrier only if those items are clearly specified in the

lease and then only if the lease recites how the amount of each item is computed.  49 C.F.R.

§376.12(h). The lease must also inform the driver that he is entitled to copies of those documents

which are necessary to determine the validity of the charge.  *Id.*

16.     By statute, each motor carrier providing transportation of household goods is

responsible for all acts or omissions of its agents which relate to the performance of such

transportation  49 U.S.C. § 13907.  An authorized motor carrier is obligated "to ensure that

[owner-operator drivers] receive all of the rights and benefits . . . under the leasing regulations . .

." regardless of whether the lease is between the authorized carrier and the driver or between the

authorized carrier and its agent.  49 C.F.R. § 376.12(m).  Thus, Defendant United is fully

responsible for harm inflicted upon owner-operator drivers by its local agents under the Truth-in-

Leasing regulations irrespective of whether United, acting in concert with its local agents,

inflicted such harm, or whether its local agents inflicted such harm acting alone.

17.     49 U.S.C. § 14704(a)(1) and (2) authorizes owner-operator drivers to bring legal

actions for injunctive relief and damages to enforce the federal Truth-in-Leasing regulations.  49

U.S.C. § 14704(e) authorizes an award of attorneys fees in such cases.

18.     The causes of action in this complaint arise because the conduct of United and its

authorized agents towards owner-operator drivers like the Plaintiffs Pelletier, Lee, and Bullard,

6

deprived them of their rights and benefits under the federal Truth-in-Leasing regulations.

## CLASS ACTION ALLEGATIONS

19.    **Class Description**. Plaintiffs bring this action on behalf of themselves and all similarly-situated owner-operators of motor vehicle equipment who were parties to leases with one or more of United's authorized agents, in which owner-operators made their equipment available for the movement of freight under United's federal operating authority.

20.    **Impracticability of Joinder.** Upon information and belief, there are numerous owner-operators leased to United's local agents at any given time. Due to driver turnover, the class of owner-operators leased to United's local agents over the time period relevant to this litigation would number in the thousands. These owner-operators are residents of various states who travel continuously throughout the country in their work. Thus, joinder of all potential class members would be impracticable.

21.    **Commonality**. United and its authorized agents have acted in ways that affect all members of the proposed class similarly and, accordingly, questions of fact and law are common to the class. When United and/or its authorized agents systematically fail to conform their conduct to the requirements of the federal Truth-in-Leasing regulations, all potential class members are similarly affected. Questions of fact are common to the class, as are legal questions respecting United's liability to all potential class members.

22.    **Typicality**. Plaintiffs' claims are typical of the claims of the proposed class as a whole because each of these owner-operators was wronged by the same illegal conduct-i.e., the

7

violation of the Leasing Regulations related to compensation, insurance, escrow accounts and charge-backs for products, services and equipment. Therefore, proof of Plaintiffs' claims will similarly prove the claims of absent class members.

23.    **Fair and Adequate Representation**. Plaintiffs are capable of fairly and adequately protecting the interests of the class because their claims are common to the class and proof of those claims will prove the claims of absent class members. Plaintiffs' interests are in harmony with the interests of other members of the class and are not adverse. During its more than 30 years in operation, OOIDA has consistently demonstrated its strong commitment to its mission of protecting the rights of owner-operators by its wide-ranging advocacy of their interests in legislative, regulatory, and judicial forums. Plaintiffs' counsel, The Cullen Law Firm PLLC, has been appointed class counsel in numerous class action lawsuits filed throughout the country on behalf of OOIDA and owner-operators.

24.    **Class Certification Appropriate Under Rule 23(b)(2)**. Defendants have acted on grounds generally applicable to the potential class as a whole. Thus, injunctive and declaratory relief is appropriate with respect to the potential class as a whole, making class certification appropriate under Federal Rule of Civil Procedure 23(b)(2).

25.    **Class Certification Appropriate Under Rule 23(b)(3)**. The questions of law enumerated in the counts below are not only common to all members of the class, but also predominate over individualized issues of law or fact, which are essentially limited to the precise amount of damages owed to each class member.

26.     Other factors favoring the certification of this suit as a class action include:

(a) the amount of damages suffered by an individual owner-operator is sufficiently small that individual owner-operators would not find it cost-effective to bring their own lawsuits;

(b) requiring individual owner-operators to prosecute separate actions would substantially impair or impede their ability to protect their interests because these individuals do not have the means or resources to pursue on an individual basis the type of claims involved here;

(c) no lawsuit raising these same issues has been filed against Defendants;

(d) it is desirable to concentrate the individual members' claims in one forum because, given the amount in controversy, to require these claims to be brought in separate forums would effectively prevent individuals from bringing claims to recover their funds; and

(e) no substantial difficulties are likely to be encountered in managing this class action.

## COUNT I

### Failure to Calculate Owner-Operator Compensation Properly

27.     The allegations contained within Paragraphs 1 – 26 are incorporated and re-alleged as though fully set forth herein.

28.     Federal Truth-in-Leasing regulations require that the amount to be paid to an

9

owner-operator driver for his equipment and services be clearly stated on the face of his lease or in an addendum to that lease. United has systematically failed to compensate Named Plaintiffs and similarly situated owner-operators properly. United makes undisclosed and unauthorized downward adjustments to the revenue base upon which compensation is calculated.

29.     United calculates driver compensation for all drivers under lease to United or to United's local agents using its own computers, and United reports its calculations to local agents who rely on those calculations when making compensation to drivers.

30.     The compensation provisions in the lease agreements with Named Plaintiffs and other United's drivers entitle the drivers to a stated percentage of revenues paid by shippers to United for, among other things the packing, loading, shipping, storage, delivery and/or unpacking of various articles including household goods. The revenue base by which an owner-operator's stated percentage is multiplied, sometimes referred to as the "tariff rates," the "discounted tariff rates" or the "Net Distributable Revenue," cannot be known or ascertained by reference to the compensation provision in United's lease agreements because that sum is subject to undisclosed adjustments based upon United's internal and unpublished policies.

31.     United makes numerous, undisclosed deductions from the amounts received from shippers before it determines the revenue base upon which owner-operator compensation is calculated. By way of illustration and not limitation:

   A.     When United enters national account household goods contracts with third-party relocation companies, United pays the relocation company a

percentage of the undiscounted invoiced charges to the shipper (often four percent). United subtracts this amount from the revenue generated by a shipment before it determines the amount of revenue to be distributed to its agents and owner-operator drivers for transportation and related services. This downward adjustment in the revenue base upon which driver compensation is based is not disclosed to drivers.

B.      Cargo moved under United's authority is ordinarily insured for less than full value, unless shippers pay for additional coverage. United sometimes negotiates contracts for the movement of household goods for national accounts that provide the shipper with full valuation coverage for its cargo without additional charge. United makes up for this lost revenue by deducting and retaining sums of money for itself (usually two percent of the undiscounted invoiced charges to the shipper) before it determines the amount of revenue that will be used to calculate owner-operator compensation. This downward adjustment in the revenue base upon which compensation is based is not disclosed to owner-operators.

C.      On certain shipments, United allows shippers to pay for transportation and related services by credit card. When a shipper chooses the credit card option, United makes a deduction from the revenues generated by a shipment to cover the fee paid to the credit card company before it determines the

amount of revenues to be distributed to its agents and owner-operator drivers. This downward adjustment in the revenue base upon which driver compensation is based is not disclosed to owner-operators.

32.     United uses the reduced revenue figures, after all deductions, to calculate owner-operator compensation even though the amounts deducted by it are included in the amount charged to and paid by the shipper, and owner-operators are entitled to a percentage of actual revenue paid by the shipper.

33.     United's compensation practices violate 49 C.F.R. § 376.12(d) to the extent that they fail to disclose various deductions made from the amounts paid by the shipper prior to calculating owner-operator compensation.

34.     Defendants' failure to compensate owner-operators properly, by making undisclosed deductions from revenue before calculating owner-operator compensation, violates the carrier's obligation in the preamble to 49 C.F.R. § 376.12 adhere to and perform in conformity with the compensation provisions of the lease.

35.     As a direct and proximate result of the violations of 49 C.F.R. §§ 376.12(d) and the preamble, Named Plaintiffs and other similarly situated owner-operators are being deprived of compensation rightfully belonging to them and have incurred and are incurring substantial monetary damages.

## COUNT II

**United's Failure to Provide Rated Freight Bills or Other Required Documents
Relevant to Compensation Violates the Leasing Regulations**

36.    The allegations contained within Paragraphs 1 – 35 are incorporated and re-alleged as though fully set forth herein.

37.    Named Plaintiffs, and other similarly situated owner-operators entered into lease agreements with United or its agents under which owner-operator compensation for transportation, packing, unpacking, and related services is a stated percentage of the tariff rates or discounted tariff rates charged to the shipper.

38.    When a lessor's [owner-operator] revenue is based on a percentage of gross revenue for a shipment, 49 C.F.R. § 376.12(g) requires the lease to specify "that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information . . . that would appear on a rated freight bill." When a computer-generated document is provided, the carrier must give owner-operators the opportunity to view the underlying documents during normal business hours. No matter what method of compensation is used, the carrier must allow owner-operators to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed.

39.    United and its local agents have refused to provide owner-operators with the required rated freight bills, contracts, or other documents underlying compensation when requested by owner-operators, in violation of the obligation in 49 C.F.R. § 376.12(g).

13

40.    As a direct and proximate result of the violations of 49 C.F.R. §§ 376.12(g) and the preamble, Named Plaintiffs and other similarly situated owner-operators lack the information that would allow them to verify the accuracy of their compensation.

41.    As a direct and proximate result of the violations of 49 C.F.R. §§ 376.12(g) and the preamble, Named Plaintiffs and other similarly situated owner-operators have been and are being deprived of compensation rightfully belonging to them and have incurred substantial monetary damages.

<u>**COUNT III**</u>

**Unlawful Pass-Through of PL/PD Insurance Costs**

42.    The allegations contained within Paragraphs 1 – 26 are incorporated and re-alleged as though fully set forth herein.

43.    By statute, a motor carrier is required to file a bond, provide insurance coverage or post security in amounts determined by the Secretary of Transportation to pay each final judgment against the carrier for bodily injury or death of an individual resulting from the negligent operation, maintenance or use of a motor vehicle or for loss or damage of property. 49 U.S.C § 13906(a)(1). The legislative and regulatory history of this so-called public liability and property damage ("PL/PD") insurance provision makes it plain that Congress wanted to provide a clear source of funds for individuals harmed by motor carriers *and* to create "additional incentives to carriers to maintain and operate their vehicles in a safe manner...." H. Rep. No. 96-1069, reprinted in 1980 U.S.C.C.A.N. 2283, 2323-2324; 49 C.F.R. § 387.1. The Truth-in-Leasing regulations require that

the lease "shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public...." 49 C.F.R. § 376.12(j)(l).

44.    United presently satisfies its statutory responsibility for procuring PL/PD insurance coverage through Defendant Vanliner.

45.    United has adopted a variety of schemes and artifices through which it has unlawfully transferred to Named Plaintiffs and other similarly situated owner-operators the cost of its statutory responsibility to maintain PL/PD insurance coverage including, but not limited to, the following:

> A.    United has adopted a policy and practice pursuant to which it has passed through the cost of this statutorily mandated PL/PD insurance to its authorized agents under circumstances where it knew, or with reasonable care should have known, that its local agents would in turn pass that cost through to owner-operator drivers;
>
> B.    United and its local agents have from time to time required owner-operators under lease to authorized agents to procure PL/PD insurance policies that jointly insure United and/or its authorized agent as well as the owner-operator. A significant number of these polices are issued by Vanliner;
>
> C.    United has from time to time imposed what it describes as unlimited indemnification responsibilities on owner-operator drivers for any loss incurred by it or its authorized agents arising out of the owner-operator driver's negligence, gross negligence, unlawful misconduct or other culpable acts or omissions. United then

15

requires the owner operator drivers to purchase insurance naming United or its
authorized agent as an additional insured. Alternatively, United agrees to enroll the
owner-operator driver in a so called "PL/PD Limiter Program" through which the
owner-operator is relieved of a substantial portion of its obligations under the
indemnification clause for a fee consisting of premiums, and administrative and/or
brokerage fees. On information and belief, any insurance polices used to underwrite
this liability are issued by Vanliner and are designed to eliminate United's exposure
to liability under the PL/PD policies issued directly to United by Vanliner; and

D.      United has adopted other policies and practices that have the effect of passing
through to owner-operator drivers its responsibility to protect the public from
financial harm caused by equipment used under its operating authority. For example,
United requires drivers to assume financial liability for all deductibles in its
insurance coverage and also requires owner-operator drivers to acquire non-trucking
liability and bob tail insurance policies covering risks already covered by its own
PL/PD insurance policies. Many of these additional policies are issued by Defendant
Vanliner.

46.      These various schemes have all had the effect of transferring the cost of United's
PL/PD statutory insurance responsibilities to owner-operators. These schemes are unlawful and
have inflicted great harm and financial hardship on Named Plaintiffs and all United owner-operator
drivers.

16

## COUNT IV

### Failure to Monitor and Control the Actions of Local Agents

47.     The allegations contained within Paragraphs 1 – 46 are incorporated and re-alleged as though fully set forth herein.

48.     United has broad statutory responsibility for the acts or omissions of its local agents. 49 U.S.C. § 13907.  United is also obligated under 49 C.F.R. §  376.12(m) to ensure that owner-operators receive the rights and benefits due them under the Leasing Regulations when transportation is provided under United's authority pursuant to  lease agreements entered into by local agents.

49.     Because United is responsible for wrongs committed by its local agents under the Truth-in-Leasing regulations while operating under its (United's) federal operating authority, it is incumbent upon United to monitor and oversee the business practices of its local agents.  Thus, United is put in the position of monitoring and overseeing the business practices of its parent company's shareholders. Since United's corporate officers and board of directors are comprised largely of representatives of United and Mayflower local agents, United occupies the classic position of a fox superintending activities in the chicken coop.

50.     United's local agents have engaged in a pattern and practice of conduct that systematically violates the federal Truth-in-Leasing regulations including compensation, charge-back, escrow and insurance related violations under 49 C.F.R. §  376.12(introductory

17

paragraph)(d),(g),(h),(i),(j) and (k). All of these unlawful activities have been made possible on account of the failure of Defendant United to fulfill its responsibilities under 49 U.S.C. § 13907 and 49 C.F.R. § 376.12(m).

51.    Historically, United has not taken steps to supervise the terms of lease agreements entered into between its local agents and owner-operators or to ensure that the conduct and business practices of its local agents have complied with the Truth-in-Leasing regulations. Starting during September 2004, United adopted a uniform lease agreement for use by its local agents. On information and belief, this uniform lease agreement has been adopted by all or substantially all of United's local agents and has been executed by substantial numbers of owner-operators including the Plaintiff Bullard.

52.    United has failed in its duty towards owner-operators under 49 U.S.C. § 13907 and 49 C.F.R. § 376.12(m) and should be required to render an accounting to Named Plaintiffs and all of its owner-operators for the wrongdoing of its local agents under the Truth-in-Leasing regulations.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs OOIDA, Norman Pelletier, Matthew O. Bullard, Sr., and Dennis A.

Lee, individually and for all others similarly situated, respectfully request that this Court:

1.    Certify a class comprised of owner-operators who, on or after February 17, 2001,

were parties to leases with United or any of United's local agents, in which the owner-operators

made their equipment and services available for the movement of freight under United's federal

operating authority;

2.    Enter a judgment declaring that it is unlawful for a motor carrier to pass through to

owner-operators the cost of its responsibility to maintain insurance for the benefit of the general

public under 49 U.S.C. § 13906(a)(1) and 49 C.F.R. § 376.12 (j)(1);

3.    Enter a judgment declaring that federally regulated motor carriers are responsible for

actions taken by their local agents in violation of the 49 C.F.R. Part 376 while the local agents are

operating under the motor carrier's federal operating authority;

4.    Enter a judgment in favor of the plaintiff class on all counts of the complaint;

5.    Order an accounting of all transactions involving owner-operator compensation;

6.    Order an accounting of all sums received by United or its local agents in connection

with the charge-back of sums to owner-operator compensation for all class members, for products,

equipment or services that exceeded the cost of such items to United or its local agents;

7.    Order United to provide (or cause to be provided) to Plaintiffs and class members

copies of all rated freight bills, computer generated documentation containing the same information,

or other acceptable documentation for all loads hauled by class members;

8.  Award damages to Plaintiffs and class members in the amount unlawfully deducted from compensation in violation of 49 C.F.R. § 376.12 (h) and (j);

9.  Award damages to Plaintiffs and class members for unpaid compensation in an amount equal to the difference between the compensation that would have been paid had United not reduced the revenue base upon which owner-operator compensation is calculated by undisclosed charges and the compensation actually paid as a result of those undisclosed adjustments;

10. Award damages to Plaintiffs and class members in an amount equal to sums deducted from their compensation (1) to reimburse Defendant's costs for PL/PD insurance coverage for the public under 49 U.S.C. § 13906(a)(1) and 49 C.F.R. § 376.12(j)(1); and/or (2) to separately underwrite the risks that Defendant's PL/PD insurance was intended to cover;

11. Create a common fund made up of all damages awarded to class members;

12. Award class counsel reasonable attorneys' fees pursuant to 49 U.S.C. § 14704(e);

13. Award class counsel a reasonable attorneys fee out of the common fund; and

14. Award such other relief as this Court may deem to be just and proper.

Respectfully submitted,

OWNER-OPERATOR INDEPENDENT DRIVERS
ASSOCIATION
NORMAN PELLETIER, MATTHEW O. BULLARD, SR.,
And DENNIS A. LEE

By their attorneys,

John A. Kiernan (BBO #271020)
Kenneth H. Naide (BBO #643213)
BONNER KIERNAN TREBACH & CROCIATA
One Liberty Square, 6th Floor
Boston, MA 02109
(617) 426-3900

Paul D. Cullen, Sr.
David A. Cohen
Susan Van Bell
THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
(202) 944-8600 (Telephone)
(202) 944-8611 (Telecopier)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**IN CLERKS OFFICE**

## I. (a)  PLAINTIFFS

OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., 1 NORTHWEST OOIDA DRIVE, GRAIN VALLEY,

**DEFENDANTS**

UNITED VAN LINES, LLC, 1 UNITED DRIVE, FENTON, MO 63026 (PLEASE SEE ADDENDUM)

(b)  County of Residence of First Listed Plaintiff  JACKSON CO., MO

(EXCEPT IN U.S. PLAINTIFF CASES)

MO. 64029  (PLEASE SEE ADDENDUM)

County of Residence of First Listed Defendant

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**U.S. DISTRICT COURT OF MASS**

(c)  Attorney's (Firm Name, Address, and Telephone Number)

BONNER KIERNAN TREBACH & CROCIATA, 1 LIBERTY SQ., BOSTON, MA 02109 (617-426-3900)

Attorneys (If Known)

**05 10317 MLW**

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
49 U.S.C. §§14102 and 14704 (a)(1) and (2); and 49 C.F.R. PART 376

Brief description of cause:
VIOLATION OF FEDERAL TRUTH-IN-LENDING REGULATIONS

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE

DOCKET NUMBER

DATE
FEBRUARY 16, 2005

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## **Addendum: 1(a)**

**Plaintiffs, continued:**

NORMAN PELLETIER, 1 Northwest OOIDA Drive, Grain Valley, MO 64029

MATTHEW O. BULLARD, SR., 100 Peaslee Road, Merrimac, NH 03054

DENNIS A. LEE, 978 Harrison Crossroad, Reidsville, NC 27320


**Defendants, continued:**

VANLINER INSURANCE COMPANY, 1 Premier Drive, Fenton, MO 63026

UNIGROUP, INC., 1 Premier Drive, Fenton, MO 63026

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

1.  Title of case (name of first party on each side only)  OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC. V.

UNITED VAN LINES, LLC

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See 2005 FEB 16 P 3: 56

local rule 40.1(a)(1)).

U.S. DISTRICT COURT
DISTRICT OF MASS.

☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☐  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
         740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

☒  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
         315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
         380, 385, 450, 891.

☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
         690, 810, 861-865, 870, 871, 875, 900.

☐  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES ☐     NO ☒

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
    28 USC §2403)

                                                    YES ☐     NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES ☐     NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES ☐     NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                                                    YES ☐     NO ☐

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☐        Central Division ☐        Western Division ☐

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
         agencies, residing in Massachusetts reside?

         Eastern Division ☐        Central Division ☐        Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
    yes, submit a separate sheet identifying the motions)

                                                    YES ☐     NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  KENNETH H. NAIDE, ESQ.

ADDRESS  1 LIBERTY SQUARE, 6TH FLOOR, BOSTON, MA 02109

TELEPHONE NO.  617-426-3900

(Coversheetlocal.wpd - 10/17/02)