UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS | ) | |
| ASSOCIATION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 CV 10317 MLW |
| v. | ) | |
| | ) | |
| UNITED VAN LINES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

Defendants United Van Lines, LLC ("United"), Vanliner Insurance Company

("Vanliner"), and UniGroup, Inc. ("UniGroup") respectfully submit the following Memorandum

of Law in support of their Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.[1]

## I. INTRODUCTION

This is a putative nationwide class action presenting complex and technical claims for

damages purportedly arising under federal regulations governing interstate motor carriers' leases

with independent owner-operator drivers.[2]  The present motion, however, is quite simple: the

Commonwealth of Massachusetts has no meaningful connection to, or local interest in, the

parties to this case or the underlying facts and events.   By contrast, there are at least two

alternative federal courts (in Missouri and Indiana) which properly can exercise jurisdiction over

this lawsuit and which are far more logical and convenient forums.

---

[1] UniGroup is concurrently moving to dismiss all claims against it for lack of personal jurisdiction.  In the event its personal jurisdiction motion is not granted, then it joins in the present motion to transfer.

[2] The relevant federal leasing regulations are set forth at 49 C.F.R. Part 376.

Most notably, **none** of the parties to this case—plaintiff or defendant—is a citizen or resident of Massachusetts.  Conversely, **all** defendants, as well as lead plaintiff Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), are citizens of the State of Missouri.  Moreover, while potential witnesses and relevant documents may be located throughout the United States, by far the greatest single concentration of such witnesses and documents is in Missouri, where all defendants' (and lead plaintiff's) headquarters are located.  Accordingly, "for the convenience of parties and witnesses, [and] in the interest of justice," this Court should transfer the present case to the U. S. District Court for the Eastern District of Missouri.

Alternatively, another more appropriate forum—and one which promotes the interests of efficiency and judicial economy—is the U. S. District Court for the Southern District of Indiana.  That is where plaintiff OOIDA and defendants' other motor carrier affiliate (Mayflower Transit, LLC) have for several years litigated many of the same legal issues presented in this  lawsuit.[3]

While the parties to the present case are not identical to those in the *Mayflower* suit, other factors—including the important federal policy favoring resolution of related cases by the same court—favor transfer to Indiana.  Accordingly, if transfer to the Eastern District of Missouri is not granted, then this suit should be transferred to the Southern District of Indiana.[4]

---

[3] Copies of OOIDA's Amended Complaints against Mayflower in the Southern District of Indiana are annexed as exhibits to the present Motion as Exs. A and B.

[4] Many if not all of the named plaintiffs' claims (and those of the putative class members) are subject to mandatory arbitration, as expressly provided in the written lease agreements entered into by such plaintiff owner-operators with United's independent agents.  Once it has been determined in which federal district court the present proceedings will be conducted, and once defendants have had adequate time to investigate, they will file an appropriate motion to compel arbitration of plaintiffs' claims.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  The Parties

Plaintiffs OOIDA, Norman Pelletier, Matthew O. Bullard, Sr., and Dennis A.

Lee—citizens of Missouri, New Hampshire, Illinois, and North Carolina (*see* Compl. ¶¶ 4-

7)—purport to bring this action on their own behalf and on behalf of the following putative class:

> [A]ll similarly-situated owner-operators of motor vehicle equipment who were
> parties to leases with one or more of United's authorized agents, in which
> owner-operators made their equipment available for the movement of freight
> under United's federal operating authority.

*Compl. ¶ 19.*  Plaintiffs claim that the independent agents of United violated certain federal

regulations promulgated pursuant to the Interstate Commerce Act, 49 U.S.C. §

14102(a)—specifically, those found at 49 C.F.R. Part 376 ("the leasing regulations").  *Id. ¶ 1.*

Defendant United is a federally regulated motor carrier which provides interstate

transportation services under authority of the U.S. Department of Transportation, and conducts

business in all fifty states.  *Compl. ¶ 8.*  United operates through a network of nearly five

hundred local agencies.  United's agents are independent business entities, located in all fifty

states, and are separately owned, managed, and operated.  *Id. ¶ 8.  See also Affidavit of Joseph*

*Schmelzle ("Schmelzle Aff.") ¶ 10.*[5]  Only thirteen United agencies—or less than three percent of

the total United agency family—are located in Massachusetts.  *Id. ¶ 11.*

Defendant UniGroup is a holding company which owns several operating

subsidiaries.  Among its direct and indirect subsidiaries are the other two named defendants,

United and Vanliner.  *Schmelzle Aff. ¶ 6.*

---

[5] Mr. Schmelzle's affidavit is annexed to the present Motion as Ex. C.

Defendant Vanliner is an insurance company which provides a variety of insurance-related services to persons and entities in the transportation industry. *Schmelzle Aff. ¶ 8.* Vanliner is an Arizona corporation, but it is headquartered in Fenton, Missouri (within the Eastern District of Missouri). *Id. ¶ 4.*

The other two defendants, United and UniGroup, are Missouri companies who are also headquartered in Fenton, Missouri. *Schmelzle Aff. ¶ 4.* None of the three defendants has any offices in Massachusetts, employs any Massachusetts residents, or maintains any corporate documents or records in Massachusetts. *Id. ¶¶ 6, 8-9.*

Other than plaintiff OOIDA (a trade association of owner-operators), the named plaintiffs in this case are independent contractors who leased their driving services and transportation equipment (primarily tractors) to various United agents. In particular:

- Plaintiff Bullard (an Illinois resident) alleges that between October 2003 and December 2004, he leased his truck and services to an independent local United agent in Pensacola, Florida.

- Plaintiff Lee (a North Carolina resident) alleges that between November 1998 and April 2003, he leased his truck and services to an independent local United agent in Burlington, New Jersey. Between April 2004 and December 2004, Lee says, he entered into a lease with a different local United agent in Blaine, Minnesota.

- Finally, plaintiff Pelletier (a New Hampshire resident) alleges that between May 1997 and March 2003, he leased his truck and services to an independent local United agent in Canton, Massachusetts.

*Compl. ¶¶ 5-7.* Accordingly, the sole claimed connection between any plaintiff in this case and Massachusetts is the fact that one individual plaintiff used to drive for one United agent in Massachusetts. However, neither that agent (nor any other United agent) is a party to this lawsuit. And even this single tenuous Massachusetts connection was eliminated more than two years ago, when plaintiff Pelletier terminated his lease with the Massachusetts agent. *Compl. ¶5.*

Defendants' alleged connections with Massachusetts are likewise minimal.  According to the Complaint, such connections are as follows:  (1) fourteen of United's "nearly 500 agents" are located in Massachusetts (*Compl. ¶ 8*); (2) two UniGroup directors allegedly reside in Massachusetts (*id. at ¶ 11*);[6] and (3) UniGroup allegedly has had "direct communications with Massachusetts residents through advertisements and over the internet" (*id.*).  Notably, plaintiffs do <u>not</u> contend that these minimal alleged Massachusetts contacts have any bearing on the substance of their pleaded claims, and indeed they do not.

B.    <u>Plaintiff OOIDA's Similar Class Action Against Mayflower Transit</u>

In April 1998, plaintiff OOIDA and several of its individual members commenced two related class action lawsuits against another UniGroup motor carrier subsidiary—Mayflower Transit, LLC ("Mayflower")—in the U. S. District Court for the Southern District of Indiana. *(See Exs. A  and B)*.  OOIDA's claims against Mayflower are quite similar to those it asserts against United here.  In both cases, plaintiffs assert damages claims stemming from the defendant carrier's alleged noncompliance with the federal leasing regulations.  Specifically, in both proceedings plaintiffs allege that:

- Mayflower (or United), and their respective independent agents, allegedly made improper deductions from owner-operator compensation;

- Mayflower (or United), and their respective agents, allegedly failed to provide owner-operators with documents required by the leasing regulations;

- Mayflower (or United), and their respective agents, improperly charged owner-operators for various forms of insurance, and in particular for public liability and property damage ("PL/PD") insurance; and

- Mayflower (or United) failed to adequately discharge a claimed legal duty to

---

[6] In fact, only one UniGroup director is a Massachusetts resident.  *Schmelzle Aff. ¶ 7.*

"monitor and oversee" the leasing practices of their independent agents.

In the several years the *Mayflower* litigation has been pending, the presiding District Judge (Hon. Sarah Evans Barker) and Magistrate Judge (Hon. V. Sue Shields) have become quite familiar with OOIDA, the UniGroup family of companies, the federal statutes and regulations governing the relationship between motor carriers and owner-operators, and a myriad of procedural and legal issues which will also arise in this case. Furthermore, trial counsel for both sides in this case are the same as they are in the *Mayflower* litigation, and such counsel have regularly appeared in the Indiana federal court in connection with the same or similar issues presented here. In the alternative, therefore, if the present case is not transferred to Missouri, considerations of judicial economy and convenience warrant its transfer to Indiana.

## III. <u>ARGUMENT</u>

A.    <u>Legal Standards Governing Transfer Requests</u>

28 U.S.C. § 1404(a)(1) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Here, there is no question that both the Eastern District of Missouri and the Southern District of Indiana are alternative forums where this suit properly "might have been brought." Plaintiffs are asserting purely federal claims in a nationwide class proceeding, and United has a number of agents in both Missouri and Indiana who have contracted with members of the putative plaintiff class. Thus, the only issue for transfer purposes is whether the proposed transferee districts are better, more efficient, and more convenient forums than this Court for litigating the present suit.

Section 1404(a)(1) is "a codification of the doctrine of forum non conveniens." *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999). However, district courts have "more discretion

to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens."

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).  The relevant factors considered in

determining whether a §1404(a)(1) transfer request should be granted include "the convenience

of parties and witnesses[;] the availability of documents; the possibility of consolidation; and the

order in which the district court obtained jurisdiction."  *Coady v. Ashcraft & Gerel*, 223 F.3d 1,

11 (1st Cir. 2000).  Additionally, "[t]he pendency of related litigation in another forum is a

proper factor to be considered in resolving choice of venue questions."  *Codex Corp. v. Milgo*

*Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. 1977).

B.    Plaintiffs' Choice Of Forum Is Entitled To Little Deference Because None Of The Parties
      Are Massachusetts Residents, The Class Members Are Scattered Throughout The
      Country, And Massachusetts Has No Meaningful Connection To The Operative Facts

        The deference generally granted to a plaintiff's forum selection does not apply in this

case for at least three reasons.  First, the rationale for such deference "is greatly weakened where

plaintiff's chosen forum is not also his home."  *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co.*

*of America*, 695 F. Supp. 644, 647 (D.R.I. 1988).  As the U.S. Supreme Court has explained,

"[w]hen the home forum has been chosen, it is reasonable to assume that [plaintiff's] choice is

convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable."

*Piper Aircraft Co.*, 454 U.S. at 255-56.  *See also EFCO Corp. v. Aluma Systems USA, Inc.*, 145

F. Supp.2d 1040, 1046-47 (S.D. Iowa 2000)("The deference given to a plaintiff's choice of forum

is based on a presumption of convenience"); *Burnstein v. Applied Extrusion Technologies, Inc.*,

829 F. Supp. 106, 110 (D. Del. 1992)("When the plaintiff has chosen to bring suit in a district

that is not his 'home turf' and which has no connection to any of the acts giving rise to the

lawsuit, the convenience to the plaintiff is 'not as great as it would be were [he] litigating at or

near [his] principal place of business or at the site of the activities at issue in the lawsuit").

Here, plaintiffs' choice of forum is not convenient.  **All** named plaintiffs reside outside Massachusetts, and three out of four of them live many hundreds of miles away.[7]  It is therefore evident that plaintiffs chose this forum not for convenience, but rather for tactical reasons that deserve no weight in the §1404 balancing analysis.  *See Burnstein*, 829 F. Supp. at 110 ("The forum chosen by the Plaintiff must reflect rational and legitimate concerns").

Second, a plaintiff's forum selection is considerably less important where, as here, the plaintiff purports to brings suit on behalf of a nationwide class.  *See, e.g.*, *Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947).  In such a class proceeding—and especially one where, as here, only federal claims are asserted—the named plaintiffs' choice of forum is of virtually no significance.  *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996)(In a class action, the named plaintiff's testimony and other input is likely to be minimal); *Firmani v. Clarke*, 325 F. Supp. 689, 691 (D. Del. 1971).  *See also General Refractories Co. v. Washington Mills Electro Minerals Corp.*, No. 94-6332, 1995 U.S. Dist. LEXIS 8351, *7-*8 (E.D. Pa. 1995)("A plaintiff's choice of forum in a class action suit is also entitled to less consideration because the testimony offered by the plaintiff in that type of action often is minimal").

Indeed, in a nationwide class suit, "a multitude of states could have an [equal] interest in seeing their citizens' complaints justly addressed."  *Job Haines Home for the Aged*, 936 F. Supp. at 228.  Any single class member's choice of forum, therefore, is "a mere fortuity."  *Id.*  As the Supreme Court has explained:

---

[7] The only plaintiff who even resides in the same region as this Court is plaintiff Pelletier of New Hampshire.  The other plaintiffs are residents of Missouri, Illinois, and North Carolina.  *Compl. ¶¶4-7.*

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice….But where there are hundreds of potential plaintiffs,…all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster*, 330 U.S. at, 524. *See also Deloach v. Philip Morris Cos., Inc.,* 132 F. Supp.2d 22, 25 (D.D.C. 2000)("[S]ince only a minuscule number of putative class members resides in the transferor forum, Plaintiffs' choice in this case is accorded little, if any, deference"); *O'Hopp v. ContiFinancial Corp.,* 88 F. Supp.2d 31, 35 (E.D.N.Y. 2000)(plaintiff's choice of forum "carries less weight in certain situations, such as when a plaintiff seeks to represent a widely dispersed class"); *Impervious Paint Industries, Ltd. v. Ashland Oil, Inc.*, 444 F. Supp. 465, 467 (E.D. Pa. 1978)(granting transfer where there was "every indication that this is a truly nation-wide class, with no concentration in this district"); *Barnett v. Alabama,* 171 F. Supp.2d 1292 (S.D. Ala. 2001)(plaintiff's forum selection is accorded less deference in a nationwide class action).

Finally, "the court may give the plaintiff's choice of forum less weight if it is not the situs of material events." *Boyd v. Snyder,* 44 F. Supp.2d 966, 970 (N.D. Ill. 1999). In this case, plaintiffs challenge the policies and practices of three Missouri-based companies, none of whom have any offices, employees, or corporate records in Massachusetts. *Schmelzle Aff.* ¶¶ *5-6, 8.* While plaintiffs also complain about the alleged leasing practices of United's local agents (only a tiny fraction of whom are located in Massachusetts), plaintiffs insist that the three <u>Missouri</u> defendants bear ultimate liability for all such claimed agent misdeeds. *See Compl. at 19, ¶3* (requesting a judgment that defendants, as "federally regulated motor carriers, are responsible for actions taken by their local agents in violation of the [leasing regulations]….").

Simply put, there is no meaningful connection of any sort between Massachusetts and the parties to this lawsuit, or the factual or legal issues presented herein. It is against this backdrop

that the Court should analyze the remaining factors relevant to transfer under § 1404.

C.       Considerations Of Convenience And Fairness Strongly Favor Transfer To Missouri

As noted above, Massachusetts lacks any substantive connection with, or local interest in, this litigation.  No named party is a resident or citizen of Massachusetts.  Conversely, the defendants are all Missouri-based, as is lead plaintiff OOIDA.  Accordingly, all officers and employees of both sides' principal parties are located in or near Missouri.  By contrast, **no** such officers and employees work or reside in Massachusetts.

Thus, this lawsuit is far more closely centered in Missouri than it is in any other single state.  The vast majority of both sides' witnesses are in or near Missouri.  *Schmelzle Aff. ¶ 12.* Likewise, the business records of all three defendants—and lead plaintiff OOIDA—are in Missouri.  *Id. ¶ 13.*  Other possible witnesses (for example, representatives of United local agents and the agents' thousands of owner-operators) are scattered throughout each of fifty states, as are their documents.  *Id. ¶ 12.*

All relevant Section 1404 convenience factors, therefore, support transfer of this action to Missouri, while none favor continued litigation in Massachusetts.  Defendants' employees would be greatly inconvenienced if they have to travel well over 1,000 miles to appear in court or give testimony at trials and hearings in this case.  Defendants' business operations may also be seriously disrupted if senior executives or other key employees are obliged to travel frequently or for extensive distances in defense of this lawsuit.  Not surprisingly, courts regularly conclude that "the obvious disruption caused to [the employees'] daily work routines and that of the corporations they work for is persuasive evidence that…a transfer would promote the parties'

convenience." *Helfant v. Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53, 58 (E.D.N.Y. 1979).

As previously noted, litigating in Missouri would also be more convenient for plaintiff OOIDA, since Missouri is its home state and that is where its senior management and all its records are located. The forum preferences of the other three plaintiffs is of decidedly lesser significance because (1) only one such plaintiff resides anywhere near Massachusetts, and (2) as class representatives, the individual plaintiffs will in any event likely "not be required to attend the trial on certain days and [will] not regularly have to present substantial evidence." *General Refractories Co.*, 1995 U.S. Dist. LEXIS 8351, *7-*8.

In circumstances strikingly similar to those presented here, a federal district court recently transferred a similar OOIDA class action to the defendant carrier's judicial district. *See OOIDA v. C.R. England, Inc.*, CV F 02-5664 AWI SMS, slip. op. at 7-17 (E.D. Cal Aug. 19, 2002). In reasoning directly applicable here, the *C.R. England* Court stated:

> The court finds that in the present case, the considerable weight usually given to the plaintiffs' choice of forum is reduced somewhat by the fact that **California is the state of residence of only one of the named Plaintiffs**, and reduced even more by the fact that **this is a class action and that none of the operative facts …occurred in this forum**. *** Further, **if this case is transferred to Utah, not only will it be closer to C.R. England's headquarters, it will be closer to OOIDA's Missouri[] headquarters**, to its principal lawyers' office in Washington, D.C., and the state of residence of at least three of the other named Plaintiffs….The court finds that in this case, **the convenience of the parties weighs in favor of litigating this case in Utah.**

*Id.* at 9-10 (emphasis added).[8]

*C.R. England* evidences a sensible approach which this Court should follow. There is simply no reason why the parties (and especially defendants) in this case should suffer the

---

[8] A copy of the District Court's transfer order in *C.R. England* is attached to the present motion as Ex. D.

inconvenience and substantial additional expense of litigating this case in a remote forum when a far more suitable and convenient forum is readily available.  Accordingly, the present suit should be transferred to the Eastern District of Missouri.

D.    Alternatively, This Case Should Be Transferred to the Southern District of Indiana

OOIDA's present lawsuit is only one of more than twenty putative class actions it has brought in recent years against motor carriers all over the United States.  In each of these suits, OOIDA alleges that the defendant carrier's purported noncompliance with one or more leasing regulation requirements gives rise to individual damages claims on the part of every one of that carrier's owner-operators.

As noted above, one such OOIDA class action has been pending for several years now against defendants' other motor carrier affiliate, Mayflower Transit, in the Southern District of Indiana.  OOIDA's contentions in the *Mayflower* litigation parallel their claims here in several important respects, including (1) allegations of improper deductions from owner-operator compensation, (2) alleged failure to furnish required documents to owner-operators, (3) supposedly improper insurance charges, and (4) alleged failure by the defendant carrier to adequately "monitor" the leasing practices of its independent agents.  Indeed, the District Court in the *Mayflower* case is presently considering its summary judgement ruling on one of the exact same claims asserted by OOIDA against United here: namely, the purely legal issue of whether a motor carrier like Mayflower (or United) is entitled to pass through to owner-operators the costs of public liability and property damage ("PL/PD") insurance.[9]

---

[9] Another fully-briefed motion under submission to the Court in *Mayflower* is defendant's pending motion to vacate class certification, based on recent precedent that, as a matter of law, very similar damages claims under the federal leasing regulations do not satisfy Rule 23 class certification requirements.  *See OOIDA v. New Prime, Inc.,* 213 F. R. D. 537 (W. D. Mo., 2002), aff'd 339 F.3d 1001 (8th Cir. 2003), *cert. den.* 541 U.S. 973 (2004).  Those same class certification defects also exist in this case.

Thus, transfer to the Southern District of Indiana will promote important interests of efficiency and judicial economy. There is no reason why this Court should be burdened by having to hear and resolve many of the same complex factual and legal issues which the Court in *Mayflower* case either has already determined or will do so shortly. "There is a strong policy favoring litigation of related claims in the same tribunal." *Teleprompter Corp. v. Polinsky*, 447 F. Supp. 53, 56 (S.D.N.Y. 1977). Accordingly, "[t]he pendency of related claims has been a persuasive factor in ordering the transfer of cases under § 1404(a)." *Id.* (collecting cases). *Codex Corp.*, 553 F.2d at 739 ("The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions"); *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F. Supp. 1308, 1310 (D. Nev. 1982)("Litigation of related claims in the same tribunal is favored in order to avoid duplicitous litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results").

The fact that the parties to the present case are not identical to those in the *Mayflower* suit does not preclude transfer to Indiana. On the contrary, forum non conveniens analysis is highly practical and permits a court to take into account realities rather than formalities. *See*, *e.g.*, *General Comm. of Adjustment GO-386*, 895 F. Supp. 249, 252 (E.D. Mo. 1995)(transferring action to forum where related litigation was pending notwithstanding incomplete identity of parties; "although the parties may differ in the cases, they are all carriers and unions or local committees…with a significant stake in the resolution of this issue"); *Cambridge Filter Corp.*, 548 F. Supp. 1308, 1310-11 ("Transfer may be appropriate even where there are different defendants in the two actions").

Here, although the named individual plaintiffs are not the same as in the *Mayflower* case, OOIDA is the lead plaintiff and true driving force behind both lawsuits (as it is in all the OOIDA

- 13 -

class actions).  Additionally, while the defendants in this action are not named parties to the *Mayflower* suit, defendant Vanliner has produced tens of thousands of documents in that case and several Vanliner and UniGroup representatives have been deposed by OOIDA's counsel. Thus, in a very real and practical sense, the federal court in Indiana is already thoroughly familiar with the parties to this case, and also with many of the legal and factual issues pertinent to OOIDA's newly-asserted claims against United.

Hence, considerations of judicial economy convenience favor litigating in Indiana rather than Massachusetts.  Thus, if this Court declines to transfer this case to the Eastern District of Missouri, it should order transfer to the Southern District of Indiana.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that this case be transferred to the U. S. District Court for the Eastern District of Missouri or, in the alternative, to

the U. S. District Court for the Southern District of Indiana.

Respectfully submitted,

SALLY & FITCH LLP

By: /s/ *Jennifer E. Greaney*

Francis J. Sally (BBO # 439100)
Jennifer E. Greaney (BBO # 643337)
225 Franklin Street
Boston, Massachusetts 02110
(617) 542-5542 (phone)
(617) 542-1542 (facsimile)

THOMPSON COBURN LLP
David Wells (*pro hac vice* app. pending)
Michael J. Morris (*pro hac vice* app. pending)
Rebecca A. Pinto (*pro hac vice* app. pending)
One U.S. Bank Plaza
St. Louis, MO 63101
(314) 552-6000 (phone)
(314) 552-7000 (facsimile)

Attorneys for Defendants United Van Lines, LLC,
Vanliner Insurance Company, and UniGroup, Inc.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Defendants' Motion to Transfer Venue Pursuant to 28 U. S. C. §1404 has been served upon the following counsel of record this 2nd day of May, 2005, by U.S. Mail first class postage prepaid.

Paul D. Cullen, Sr.
David A. Cohen
Susan Van Bell
THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W., Suite 300
Washington, DC 20007

John A. Kiernan
Kenneth H. Naide
BONNER KIERNAN TREBACH & CROCIATE
One Liberty Square, 6th Floor
Boston, MA 02109
(617) 426-3900

/s/ *Jennifer E. Greaney*
Jennifer E. Greaney