UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 05 CV 10317 MLW |
| v. | ) ) | |
| UNITED VAN LINES, LLC, et al., | ) ) | |
| Defendants. | ) | |

## DEFENDANTS UNIGROUP, INC.'S AND VANLINER INSURANCE COMPANY'S MOTION TO DISMISS NON-MOTOR CARRIER DEFENDANTS

COME NOW defendants UniGroup, Inc. ("UniGroup") and Vanliner Insurance Company ("Vanliner") and respectfully move this Court to dismiss plaintiffs' Class Action Complaint as to these defendants with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1]  In support thereof, UniGroup and Vanliner state as follows:

1.      Each count of this putative class action lawsuit arises from alleged violations of the federal motor carrier leasing regulations codified at 49 C.F.R. Part 376 (the "leasing regulations").  Plaintiffs claim that written leases they entered into with independent local agents of defendant United Van Lines ("United"), a federally regulated motor carrier, do not comport in certain respects with leasing regulation requirements.

2.      However, those regulations do not, as a matter of law, apply to the two non-motor carrier defendants in this case, UniGroup and Vanliner.  Accordingly, all claims against UniGroup and Vanliner should be dismissed.

---

[1] Defendant UniGroup is concurrently moving to dismiss all claims against it for lack of personal jurisdiction.  If its personal jurisdiction motion is not granted, then it joins in the present motion.

3.      UniGroup is the parent holding company of defendant United, while defendant Vanliner is UniGroup's insurance subsidiary.  *See* Compl. ¶¶ 9-10.  Plaintiffs do not claim that either UniGroup or Vanliner is a motor carrier.  *Id*.  Nor does the Complaint contain any allegations connecting UniGroup or Vanliner to the federally regulated leases upon which all of plaintiffs' claims are based.

4.      Indeed, plaintiffs do not (and cannot) allege that UniGroup or Vanliner were ever parties to any such leases.  Instead, plaintiffs seek to hold UniGroup and Vanliner liable solely because they happen to be affiliated with defendant United, the only motor carrier defendant in this case.  *See* Compl. ¶12 ("United, Vanliner, and UniGroup, with their interlocking boards of directors and corporate officers, and with their common ownership, are affiliated entities and operate a seamless business enterprise").

5.      However, the relevant federal statutes and regulations do not permit plaintiffs to impute the claimed regulatory noncompliance of defendant United to its non-motor carrier affiliates.  To the contrary, the requirements imposed by the leasing regulations—and the statutes under which they were promulgated—are expressly limited to "motor carriers" who "perform [federally] authorized transportation" services in leased equipment.  *See* 49 C.F.R. § 376.11.

6.      Plaintiffs concede that UniGroup and Vanliner are not motor carriers who conduct authorized transportation services.  Nor do plaintiffs contend that United, which is a motor carrier, somehow used UniGroup or Vanliner to try to circumvent compliance with applicable regulatory requirements.  Nevertheless, and despite the fact that the leasing regulations apply only to motor carriers, plaintiffs improperly seek to lump all three defendants together in an improper attempt to join UniGroup and Vanliner as parties to this case.

7.    Plaintiffs give no reason why the admittedly distinct corporate identities of the various defendants in this case should be disregarded, especially since neither UniGroup nor Vanliner has ever entered into any regulated lease agreement with any plaintiff owner-operator.

8.    Accordingly, because UniGroup and Vanliner are not subject to the federal leasing regulations upon which plaintiffs' claims are premised, and did not engage in any regulated activity, all claims against them should be dismissed.

9.    In further support of this Motion, UniGroup and Vanliner incorporate herein their accompanying memorandum of law, together with the following Exhibits attached hereto:

    a.  Ex. A – Order entered in *OOIDA v. Landstar System, Inc.* No. 3:02-cv-1005, slip. op. (M.D. Fla. June 4, 2004).

    b.  Ex. B – Administrative order entered by the former Interstate Commerce Commission in *Dart Transit Company—Petition For Declaratory Order—Leasing Regulations*, 9 ICC2d 701, 1993 WL 2001 82 (I.C.C., June 14, 1993).

## LOCAL RULE 7.1(A)(2) CERTIFICATE

10.    Michael Morris, one of the counsel for defendants herein, conferred with David A. Cohen, one of the counsel for plaintiffs, on April 29, 2005 in a good faith but unsuccessful effort to resolve or narrow the issues presented by this Motion.

## REQUEST FOR ORAL ARGUMENT

11.    UniGroup and Vanliner believe that oral argument on the present Motion would be beneficial to the parties and would assist the Court in its determination of the issues presented. Accordingly, pursuant to Local Rule 7.1(d), UniGroup and Vanliner request the Court to schedule oral argument on this Motion.

WHEREFORE, Defendants UniGroup, Inc. and Vanliner Insurance Company respectfully request this Court to dismiss each count of plaintiffs' Class Action Complaint as to these defendants with prejudice and at plaintiffs' costs, and for such other and further relief as may be appropriate in the circumstances.

Respectfully submitted,

SALLY & FITCH LLP

By: /s/ *Jennifer E. Greaney*
     Francis J. Sally (BBO # 439100)
     Jennifer E. Greaney (BBO # 643337)
     225 Franklin Street
     Boston, Massachusetts 02110
     (617) 542-5542 (phone)
     (617) 542-1542 (facsimile)

     THOMPSON COBURN LLP
     David Wells (*pro hac vice* app. pending)
     Michael J. Morris (*pro hac vice* app. pending)
     Rebecca A. Pinto (*pro hac vice* app. pending)
     One U.S. Bank Plaza
     St. Louis, MO 63101
     (314) 552-6000 (phone)
     (314) 552-7000 (facsimile)

     Attorneys for Defendants United Van Lines, LLC,
     Vanliner Insurance Company, and UniGroup, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Defendant UniGroup Inc.'s and Vanliner Insurance Company's Motion to Dismiss Non-Motor Carrier Defendants has been served upon the following counsel of record this 2nd day of May, 2005, by U.S. Mail first class postage prepaid.

> Paul D. Cullen, Sr.
> David A. Cohen
> Susan Van Bell
> THE CULLEN LAW FIRM, PLLC
> 1101 30th Street, N.W., Suite 300
> Washington, DC 20007
>
> John A. Kiernan
> Kenneth H. Naide
> BONNER KIERNAN TREBACH & CROCIATE
> One Liberty Square, 6th Floor
> Boston, MA 02109
> (617) 426-3900

> /s/ *Jennifer E. Greaney*
> Jennifer E. Greaney

- 5 -



**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

2004 JUN -4 P 3: 46

'· · -· ··, ·· · · · · · · T COURT
·· ·· -·· '-· · · · 'I OF FLORIDA
· · · · · .A

**OWNER-OPERATOR INDEPENDENT**
**DRIVERS ASSOCIATION, INC., et al,**

        **Plaintiffs,**

vs.                              **CASE NO. 3:02-cv-1005-J-25HTS**

**LANDSTAR SYSTEM, INC., et al,**

        **Defendants.**
_____/

## O R D E R

    **THIS CAUSE** is before this Court on Defendants' Motion to Dismiss Complaint (Dkt. 22),

and Plaintiffs' response thereto (Dkt. 35), and the parties' supplemental responses (Dkts. 91, 92, and

94). Upon consideration, after having reviewed the pleadings filed by the parties, this Court finds

as follows:

    The instant action is brought by Plaintiff drivers who are owner-operators of truck tractors

who lease their equipment and their services to motor carriers that haul freight in interstate

commerce, pursuant to operating authority issued by the U.S. Department of Transportation (DOT),

and the Federal Motor Carrier Safety Administration (**FMCSA**). Plaintiff, Owner-Operator

Independent Drivers Association, Inc. ("**OOIDA**") is a trade association with over 89,000 members

nationwide that represents the interests of owner-operators before federal and state governments

and in various such actions as this. This action arises out of 49 U.S.C. §§ 14102, 14704 [provisions

within the Interstate Commerce Commission Termination Act ("**ICCTA**")] and 49 CFR Part 376,

*et seq.*

    Defendants seek dismissal of the complaint, pursuant to Federal Rule of Civil Procedure



EXHIBIT

A



12(b)(6), for the following reasons:  i) the claims of Plaintiff Schmidt based upon 49 U.S.C. § 14704(a)(2) do not apply retroactively to Plaintiff Schmidt's agreement with Defendants[1]; ii) 49 U.S.C. § 14704(a)(1) does not provide a private cause of action for owner-operators to sue motor carriers for injunctive relief without first obtaining an administrative order from the Secretary of Transportation, an act which Plaintiffs have failed to do; iii) 49 U.S.C. § 14704(a)(2) does not authorize owner-operators to sue motor carriers directly for damages for violations of the federal leasing regulations; iv) this Court must choose between conflicting congressional intent regarding a private right of action; v) Plaintiffs have failed to state a claim upon which relief can be granted against Defendants Landstar System, Inc., Landstar Express America, Inc., Landstar Gemini, Inc., and Landstar Logistics, Inc. (collectively "the Subsidiaries") since the Subsidiaries have not entered into leases with any of the Plaintiffs.  Alternatively, Defendants ask this Court to stay this case under the doctrine of primary jurisdiction pending a ruling by the Federal Motor Carrier Safety Administration ("FMCSA") as to the proper compliance standard in leasing regulation cases.  This Court will address each of Defendants' arguments in turn.

## I.  Private Right of Action

Defendants' assert that 49 U.S.C. § 14704(a)(1) does not provide a private cause of action for owner-operators to sue motor carriers for injunctive relief without first obtaining an administrative order from the Secretary of Transportation.  The Eight Circuit has held otherwise. *See Owner-Operator Independent Drivers Association, Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999)(*New Prime I*).  The *New Prime I* court held "that 49 U.S.C. § 14704(a) authorizes private

---

[1] Defendants' claims as they relate to Schmidt have been dealt with by a prior Order from this Court.

actions for damages and injunctive relief to remedy at least some violations of the Motor Carrier Act

and its implementing regulations.  Thus, we reject the motor carriers' contention that FHWA's

remedial jurisdiction is exclusive." *Id.* at 785.[2]  This Court agrees with the Eighth Circuit.

## II.  Direct Suit for Damages

The Eighth Circuit in *New Prime I,* furthermore, addressed Defendants' next ground for

dismissal of Plaintiffs' complaint.  The *New Prime I* Court concluded "[d]espite the[] linguistic

imperfections and inconsistencies, the most logical reading of the language of § 14704(a)(2) is that

it authorizes private parties to sue for damages for carrier conduct 'in violation of [regulations

promulgated under] this part.'"  *Id.*  The Court's conclusion was "reinforced" by the legislative

history for § 14704(a)(2).  *Id.* at 785.  This Court, again, finds the analysis of the Eight Circuit is

applicable to this case and concludes that the complaint need not be dismissed for this reason.

## III.  Statute of Limitations

Defendants assert that Plaintiffs' claims are governed by a two-year statute of limitation as

opposed to the four-year statute claimed by Plaintiffs.  Defendants maintain Plaintiffs' claims are

premised upon 49 U.S.C. § 14704(a)(2), which provides:

> **Damages for violations.** - A carrier or broker providing
> transportation or service subject to jurisdiction under chapter 135 is
> liable for damages sustained by a person as a result of an act or
> omission of that carrier or broker in violation of this part.

According to Defendants, "Plaintiffs' reliance on this paragraph requires the Court to choose

between two contradictory interpretations of the Act's unusual structure: either Congress did not

---

[2]  In reaching this conclusion, the *New Prime I* court addressed the following allegation:
"Prime argues that this provision must be limited to actions brought to enforce FHWA orders
because it is part of § 14704(a)(1), which it titled 'Enforcement of Order.'  We disagree."  *New
Prime I,* 192 F.3d at 784.

3

intend 49 U.S.C. § 14704(a)(2) to establish a private of action for damages - an interpretation consistent with Congress's not having enacted a statute of limitations expressly applicable to that paragraph - or, correcting for a scrivener's error, Congress must have intended to create a private right of action subject to the two-year statute of limitations set forth in § 14705(c)." (Dkt. 23, pgs. 17-18).

As explained above, this Court concludes that a private right of action has been created under 49 U.S.C. § 14704(a), accordingly this Court need not re-address that point. Nevertheless, Defendants also assert a scrivener's error on Congress's behalf. Defendant maintains that Congress could not have intended two separate statutes of limitations for freight overcharges and no statute of limitations for Plaintiffs' actions. This Court disagrees.[3]

Moreover, Plaintiffs have provided this Court with other district court cases which have discussed arguments similar if not identical to Defendants instant assertions and have concluded that a four year statute of limitations should apply. In *Owner-Operator Independent Drivers Ass'n, Inc. v. Bulkmatic Transport Co.*, No. 03 C 7869, slip op. (E.D. ILL. Apr. 29, 2004) the Court determined that the generally applicable four year statute of limitations found in 28 U.S.C. § 1658 covered claims brought by plaintiffs pursuant to 49 U.S.C. § 14704(a)(2). The same conclusion was reached in *Owner-Operator Independent Drivers Ass'n, Inc. v. Ledar Transport*, No. 00-0258-CV-W-FJG, slip op. at 9-11 (W.D. MO Jan. 7, 2004). This Court agrees with the analysis of those cases and concludes that the four year default statute of limitations, provided for in 28 U.S.C. § 1658, provides

---

[3] The statute is clear: an eighteen month statute of limitations is provided for recovery of overcharges (§ 14705(b)); and a two years statute of limitation is provided for recovery of damages as a result of those overcharges (§ 14705(c)). Therefore, this Court will not address the statutory history as Defendant suggests.

4

for a four year statute of limitations for this action.

## IV. The Subsidiaries

Defendants claim that Plaintiffs have failed to state a claim upon which relief can be granted against the Subsidiaries, as Plaintiffs have not entered into lease agreements with those companies. The Plaintiffs in this matter have not demonstrated to this Court the requirements of standing as to each of the Defendants. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)(stating "[a] named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone-not himself, and not for any other member of the class.") Moreover, this is not a case where a contractual obligation binds all defendants or where a state or local law requires common action by the defendants. *See Moore v. Comfed Savings Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990). Therefore, this Court determines that the Subsidiaries should be dismissed from this action.

## V. Doctrine of Primary Jurisdiction

Defendants, alternatively, assert this Court should stay this case under the doctrine of primary jurisdiction pending a ruling by the FMCSA as to the proper compliance standard to be applied in leasing regulation cases. The doctrine of primary jurisdiction:

> "is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir.1988). Even though the court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59,

> 64 (1956) (explaining that, like an exhaustion of remedies requirement, the primary jurisdiction doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties").

*Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001). Defendants suggest that the doctrine of primary jurisdiction should be utilized in this instance the following reasons: i) this Court's enforcement of the complaint requires the resolution of whether a "substantial compliance" governs determinations under the leasing regulations; ii) FMCSA is the comprehensive regulator of the motor carrier industry; and iii) deferring to the FMCSA will provide uniformity throughout the regulatory scheme.

In *New Prime I*, the Eighth Circuit concluded that § 14704(a)(2) permits a private cause of action for damages and injunctive relief. *New Prime I*, 192 F.3d at 758. Furthermore, in *New Prime I* the district court dismissed the complaint, pursuant to the doctrine of primary jurisdiction. The FHWA replied:

> refusing to exercise its discretionary jurisdiction under § 14701(a), or its discretion to commence an enforcement action under § 14702(a)(2), because Congress in the ICC Termination Act's legislative history told the agency not to allocate scarce resources to resolving private disputes. The agency further expressed its view that resolution of the Owner-Operators' claims "are fairly straightforward matters clearly within the competence of a court to resolve."

*New Prime I*, 192 F.3d at 785.[4] The facts of this case are at least as similar to those in *New Prime I* such that there is a likelihood that the agency would resolve the instant matters in the same manner.

---

[4] In *New Prime I* the "Owner-Operator Independent Drivers Association and individual owner-operators filed a class action complaint against New Prime, Inc., a registered motor carrier . . . alleging that provisions in Prime's standard lease agreements and equipment rental-purchase contracts violate FWHA leasing regulations and are unconscionable under Missouri Law. Briefly stated, the Owner-Operators challenge contract terms governing reserve funds and security deposits as violating C.F.R. §§ 376.12(l) & (k)." *New Prime I*, 192 F.3d at 780.

6

Finally, only courts have the authority to grant injunctive relief to a plaintiff, as Plaintiffs' seek in the instant action. 49 § 14704(a)(1); *see Owner-Operator Independent Drivers Association, Inc., v. Arctic Express, Inc.*, 87 F.Supp.2d 820, 822 (S.D. Ohio 2000); *Bonkowski v. Z Trnasport, Inc.*, 00-5396, 2002 WL 1821673 *3 (N.D. Ill. 2002); *Owner-Operator Independent Drivers Association v. Mayflower Transit, Inc.*, 161 F.Supp.2d 948, 956-57 (S.D. Ind. 2001). For these reasons, this Court concludes that the case should not be stayed.

Accordingly, it is **ORDERED**:

1. Defendants' Motion to Dismiss Complaint (Dkt. 22) is **GRANTED in PART** as to Plaintiff Schmidt and Defendants Landstar System, Inc., Landstar Express America, Inc., Landstar Gemini, Inc., and Landstar Logistics, Inc., but it is otherwise **DENIED**.

2. Defendants' Motion, and Supporting Memorandum for Leave to File Supplemental Authority in Connection with their Motion to Dismiss Complaint (Dkt. 91) is **GRANTED**.

3. This Court's Order Staying all Proceedings Pending Appeal (Dkt. 84) is hereby **LIFTED**.

**DONE AND ORDERED** in Chambers this _4th_ day of June, 2004.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record
Courtroom Deputy

7

F I L E   C O P Y

Date Printed: 06/07/2004

Notice sent to:

_____   Michael R. Freed, Esq.
        Brennan, Manna & Diamond, PL
        Humana Centre Building
        76 S. Laura Street, Ste. 1700
        Jacksonville, FL  32202

        3:02-cv-01005    spw

_____   Paul D. Cullen, Esq.
        The Cullen Law Firm, PLLC
        1101 30th St., N.W., Suite 300
        Washington, DC  20007-3770

        3:02-cv-01005    spw

  _____   Joseph A. Black, Esq.
        The Cullen Law Firm, PLLC
        1101 30th St., N.W., Suite 300
        Washington, DC  20007-3770

        3:02-cv-01005    spw

_____   Daniel R. Unumb, Esq.
        The Cullen Law Firm, PLLC
        1101 30th St., N.W., Suite 300
        Washington, DC  20007-3770

        3:02-cv-01005    spw

_____   Daniel E. Cohen, Esq.
        The Cullen Law Firm, PLLC
        1101 30th St., N.W., Suite 300
        Washington, DC  20007-3770

        3:02-cv-01005    spw

_____   Lawrence Joseph Hamilton II, Esq.
        Holland & Knight LLP
        50 N. Laura St., Suite 3900
        Jacksonville, FL  32202

        3:02-cv-01005    spw

_____   Daniel R. Barney, Esq.
        Scopelitis, Garvin, Light & Hanson, P.C.
        1850 M St., NW, Suite 280
        Washington, DC  20036-5804

        3:02-cv-01005    spw

____    Gregory M. Feary, Esq.
        Scopelitis, Garven, Light & Hanson, P.C.
        10 W. Market St., Suite 1500
        Indianapolis, IN  46204-2968

        3:02-cv-01005    spw

____    Robert L. Browning, Esq.
        Scopelitis, Garven, Light & Hanson, P.C.
        10 W. Market St., Suite 1500
        Indianapolis, IN  46204-2968

        3:02-cv-01005    spw

____    Timothy W. Wiseman, Esq.
        Scopelitis, Garven, Light & Hanson, P.C.
        10 W. Market St., Suite 1500
        Indianapolis, IN  46204-2968

        3:02-cv-01005    spw



9 I.C.C.2d 701                                                                 Page 1

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

SURFACE TRANSPORTATION BOARD (S.T.B.)

DART TRANSIT COMPANY--PETITION FOR DECLARATORY ORDER--LEASING REGULATIONS
NO. MC-C-30192

Decided June 14, 1993

**1 Effective on June 24, 1993

*701 The Commission finds that, under the leasing regulations at 49 C.F.R. Part 1057, Subpart B: (1) certain disclosure provisions apply, and (2) petitioner has satisfied those provisions. Accordingly, this proceeding is discontinued.

BY THE COMMISSION:

By the petition file September 26, 1991, Dart Transit Company (Dart or petitioner) seeks a declaratory order to determine, under the leasing regulations at 49 C.F.R. Part 1057, Subpart B: (1) whether a lease must specify the terms of a separate, independent, equipment purchase or rental contract between the lessor and an affiliated third party, which does not directly give the carrier (lessee) the right to make deductions from the lessor's compensation for purchase or rental payments, and (2) whether a motor carrier must treat money remitted to an affiliated third party's equipment maintenance reserve fund as the carrier's own escrow fund.

By decision served January 28, 1992, the Commission instituted this proceeding and invited comments. Comments were received from William J. Monheim, the Owner-Operator Independent Drivers Assn., Inc., and the Commission's Office of Compliance and Consumer Assistance (OCCA). Dart filed a "Response to Comments in Opposition" on June 3, 1992, and, on June 10, 1992, OCCA replied. [FN1]

*702 For the reasons discussed below, we conclude that the leasing regulations involving disclosure of equipment lease terms and escrow funds apply. We further that Dart was in substantial compliance with the leasing regulations at 49 C.F.R. Part 1057.

BACKGROUND

Dart has been involved in a dispute with the Commission's Central Regional Office over the meaning of certain provisions of the leasing regulations and seeks a Commission ruling supporting its interpretation. Under 5 U.S.C. § 554(e), the Commission has authority to issue a declaratory order to terminate a controversy or to remove uncertainty. We will exercise that authority here.

Petitioner, a motor common carrier of property, employs independent drivers [FN2] to provide equipment for its operations. Its affiliate, Highway Sales, Inc. (Highway), [FN3] leases motor-vehicle equipment to such independent drivers, subject to a requirement that the equipment be used only in service *703 for (i.e., "leased" to) Dart. [FN4] Highway maintains a reserve fund for maintenance of the vehicles. Approximately half of Dart's independent drivers use equipment leased from Highway under this arrangement, but Dart does not treat its independent drivers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



9 I.C.C.2d 701                                                                                                     Page 2

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

differently if they obtain equipment from other sources.

1. Rental Payments. The Commission's regulations at 49 C.F.R. § 1057.12(i) provide
    The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.
**\*2** The equipment rental contracts between Highway and the independent drivers require that the drivers request Dart to remit rental payments and maintenance reserve funds directly to Highway. Dart asserts, accordingly, that these remittances are not made on the request of Highway or of any other third party, [FN5] and that the lease between Dart and its independent drivers need not specify the terms of the equipment rental contracts between the drivers and Highway. Dart argues that the Commission's leasing regulations apply only if the basis for the carrier's deduction is the third-party purchase or lease agreement, which must directly give the carrier the right to make deductions.

The Commission's Central Region (Regional Office) issued warning correspondences [FN6] to Dart, relying on No. MC-C-33050, Central Transportation, Inc.--Petition for Declaratory Order (not printed), served July 7, 1988 (Central). The Regional Office maintained that Dart's leases: (a) violate the prohibition against requiring independent drivers to purchase or rent any products, equipment, or services from the carrier as a condition of **\*704** entering into the lease agreement, and (b) fail to specify the terms of the equipment rental contracts between the drivers and Highway, which assertedly give the carrier the right to make deductions from the drivers' compensation for purchase or rental payments. [FN7]

Dart explains that it now deducts and remits equipment lease payments (as well as maintenance reserve funds, discussed infra) to Highway if so directed by the independent drivers on an addendum (addendum 2) to the operating agreement. The "Carrier Operating Agreement" specifically provides:
    If you request us [Dart] on Addendum 2 to withhold money, we shall make deductions from any monies otherwise due you.
The addendum [FN8] [entitled "Contractor Settlement Deduction Request"], in turn, allows the independent drivers to designate a schedule of deductions (specifying the amount and frequency) in various specified categories, including:
    Highway Sales, Inc.:
    Maintenance Reserve Fund
    **\*705** Tractor Lease Payment.
The addendum must be signed and dated by the independent contractor and each specified deduction must be initialed separately.

Dart suggests that no useful purpose would be served by further requiring that the "Vehicle Lease Agreement" be attached to the "Carrier Operating Agreement." Dart argues that it is not a party to the equipment rental agreement. Assertedly, it has no rights, privileges, duties, or responsibilities in connection with the agreement, was not involved in negotiating the agreement, and does not administer the agreement. Dart believes that its only obligations are to the independent drivers. Dart further argues that it should be sufficient that independent drivers advise the carrier in writing of the amount to be deducted and transferred to the equipment rental company because the carrier's responsibilities then are completely defined by the "Carrier Operating Agreement."

**\*\*3** 2. Escrow Funds. An escrow fund [FN9] is defined in 49 C.F.R. § 1057.2(l) as:
    Money deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and State permit costs, and for any other purposes

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

mutually agreed upon by the lessor and lessee.
Dart argues that Highway's equipment maintenance reserve fund is not a "carrier's escrow fund" under 49 C.F.R. § 1057.2(l). Rather, it asserts, the fund is solely an arrangement between the driver and Highway; Dart does not assume responsibility for the fund and has no control over the purpose for which the money is spent. The Regional Office disagreed with this position on grounds that: (1) Dart and the drivers mutuality agree on the purpose of the fund, and (2) the fund is actually under Dart's control, as shown by Highway's affiliation with Dart.

**\*706 DISCUSSION AND CONCLUSIONS**

This dispute stems from Highway's affiliation with Dart. The issues here would not have been raised if Highway were an independent equipment rental business, unaffiliated with Dart. Likewise, it is clear that our regulations do not permit Dart to do itself what it maintains Highway should be allowed to do. Dart argues that, because its affiliate is a separately operated company, it is not subject to the requirements that would otherwise apply. OCCA takes the position that Highway's status as an affiliate of Dart means that it should be treated as Dart's agent and, thus, that the leasing regulation provisions applicable to Dart (i.e., lease specification of equipment rental terms and escrow fund requirements) also apply to Highway.

In reaching our conclusions, we have considered the comments, as well as the purpose of the Commission's leasing regulations. We agree with OCCA that Dart must comply with the equipment rental terms and escrow account provisions of the leasing regulations concerning the activity of its affiliate, Highway. On this record, however, we are satisfied that Dart's "Independent Contractor Operating Agreement" and the addendum reflecting deductions from independent drivers' compensation satisfy the requirements of those regulations. Accordingly, we will discontinue this proceeding.

1. Rental Payments. We do not find any violation of the prohibition against requiring independent drivers to purchase or rent products, equipment, or services from the carrier as a condition precedent to the lease agreement. [FN10] Dart in no sense requires that its independent drivers lease equipment from Highway. Indeed, the evidence shows that many of Dart's drivers do not do so. In fact, the only operative requirement is Highway's specification that the drivers lease their equipment to Dart as a term of the equipment rental contract. This condition is not prohibited by the leasing regulations.

Dart's argument that the equipment rental provisions of the leasing regulations do not apply here is flawed because of the affiliation between Dart and Highway. In Lease and Interchange of Vehicles, 131 M.C.C. 141, 156-157 (1979), the Commission observed:
**\*\*4 \*707** Some carriers argue that the last sentence of the final rule should be modified to apply only to equipment purchase or rental contracts between the carrier [here, Dart] and the lessor [here, the independent driver]. We reject this argument because often equipment purchase or rental contracts are between lessors [drivers] and companies which are subsidiaries of or otherwise related to the carrier lessee. Thus, the lessee carrier has a creditor/debtor involvement with the lessor and is not merely deducting payments as a favor to the lessor and an unrelated third party. For this reason we will not modify the last sentence of the rule. As it stands, it is fully consistent with the truth-in-leasing principle of this proceeding. [ [Emphasis appears in the original.]

Thus, when adopting the regulation at issue here, the Commission clearly contemplated that a different rule should apply to situations where the equipment rental company is affiliated with the carrier than when the equipment rental company is an independent, unrelated business enterprise. Dart has not shown that this policy should be changed, and we reject petitioner's suggestion that its deductions from the compensation of its independent drivers are made only as a "favor" to the drivers.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701 Page 4

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

The essential purpose of the equipment rental regulation was again discussed in Central, supra at 3, where the Commission noted:

The language of the regulation is intended to provide "full disclosure of any system of deductions between authorized carriers and their affiliated equipment purchase or rental companies." See, Lease and Interchange of Vehicles, 131 M.C.C. 286, 316 (1978), wherein the Commission indicates the rule addresses owner-operators' concerns about deductions made by equipment sales, rental or finance companies on behalf of affiliated carriers and deductions made by carriers on behalf of such affiliated companies.

In short, the regulation is intended to prevent abuses or the potential for abuse occasioned by collusion between a carrier and the third-party beneficiary of an equipment purchase deduction. It is not necessary that the carrier be an agent or assignee of the third-party beneficiary.

We, thus, agree with OCCA that the Central decision, supra, stands for the proposition that a carrier's affiliation with a third party equipment sales or rental concern is sufficient to invoke the full-disclosure protections of the involved leasing regulations. We reject Dart's attempt to confine the Central holding to circumstances where the carrier is an agent or assignee of the third party beneficiary of the lease agreement terms. The undisputed fact that Dart and Highway are affiliated is sufficient to trigger the disclosure requirements of § 1057.12(i) (second sentence) in order for Dart (the carrier lessee) lawfully to deduct from lessors' compensation rental payments for Highway (the third party beneficiary). *708 (the carrier lessee) lawfully to deduct from lessors' compensation rental payments for Highway (the third party beneficiary).

**5 We are persuaded, however, that all § 1057.12(i) requires is that the independent driver advise the carrier in writing of the amount to be deducted and transferred to the equipment rental company. Here, the carrier's responsibilities are completely defined in the "Carrier Operating Agreement." Thus, the agreement is consistent with and indeed, reinforces the "truth-in-leasing" purpose of the Part 1057 regulations. See, Lease and Interchange of Vehicles, 131 M.C.C. 286, 316 (1978) (Lease and Interchange). See also, Central, supra, at 3. We note that, in adopting the disclosure requirement of the leasing regulations, the Commission did not dictate the form of the disclosure.

Dart's "Carrier Operating Agreement" clearly provides that the carrier will withhold funds from its independent drivers' compensation only if so directed by the drivers. The addendum to Dart's Independent Contractor Operating Agreement is the authorization for Dart to deduct and remit funds in amounts and on withholding schedules specified by the owner-operators. The addendum, thus, conveys the essence of owner-operators' equipment lease arrangements with Highway. We believe that this form of disclosure is consistent with the letter of the leasing regulations as well as its intent--to protect owner-operators from carrier abuse and collusion between carriers and third-party equipment rental interests.

The Commission announced in Lease and Interchange, supra, at 315-316, when proposing the regulation at 49 C.F.R. § 1057.12(i), that the "*** rule is designed to ensure that the lessor will not be obligated to purchase or rent products or services from the authorized carrier as a condition to entering into a lease arrangement." Clearly, this interest is satisfied by having the owner-operator affirmatively instruct Dart on the "Independent Contractor Operating Agreement" addendum to deduct and remit to Highway specific sums for equipment rental purposes. The fact that the addendum bears only the signature of the party the leasing regulations are designed to protect (the independent driver) does not mean that drivers involved in equipment rental arrangements with Highway are subject to coercion or deprived of information regarding terms of the arrangements. Accordingly, we find that the "Contractor Settlement Deduction Request" appended to Dart's agreement with its owner-operators complies with the leasing regulations.

That the addendum was developed only after the problems and shortcomings of Dart's earlier agreement were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701                                                                                    Page 5

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

pointed out in the July 1990 *709 OCCA warning letter does not alter our conclusion. Dart's corrective measure adopted in response to OCCA's investigative and warning actions is precisely the response that warning letters seek. Whether any prior deficiencies in Dart's agreement with its owner-operators were the result of "clerical error," as petitioner suggests, or a violation of the leasing regulations is irrelevant. It is clear from the record here that Dart now is complying with the leasing regulations.

**6 2. Escrow Funds. Under the equipment rental contract, the independent driver deposits money with Dart, through the deduction from his or her compensation, in order to pay Highway and contribute to the maintenance reserve fund. Although this fund plainly is an escrow fund, the issue is whether it qualifies as the carrier's escrow fund. Dart is not a party to the equipment rental agreement between Highway and the independent driver; likewise, Highway is not a party to the lease between the independent driver and Dart. The initial question, then, is whether the affiliation between Dart and Highway is sufficient to impute the agreements of either of them to the other. We believe that it is.

The record shows that Dart does not itself maintain this escrow fund. Rather, the monies deducted from the drivers' compensation are forwarded immediately to Highway; it is Highway itself that maintains the escrow fund; and Dart has no legal right--by contract or otherwise--to control the fund. Dart's function in deducting these funds is only to transfer them directly to Highway. Accordingly, the monies that are deducted are not at any time "on deposit" with Dart. [FN11] In addition, Dart asserts that it does not control the escrow fund and points out that it has no agreement with its independent drivers as to the purpose or use of the funds. [FN12] Highway *710 has sole access to the maintenance reserve fund; Dart has no access to the fund balances and cannot authorize any deductions.

We again find that the affiliation between Dart and Highway is the determining factor. Highway exists to provide Dart with a reliable equipment pool. This constitutes a substantial economic benefit to Dart. Given the parties' affiliation, we believe Dart should treat money remitted to Highway's maintenance reserve fund the same way it would if the money were remitted to Dart's own fund.

In Ex Parte No. MC-43 (Sub-No. 7A), Lease and Interchange of Vehicles (Leasing Involving Carrier Agents) (not printed), served January 24, 1983, when discussing the escrow issue, the Commission noted that, if the agent held escrow funds solely for its own purpose, the principal carrier would not be responsible for the payment of interest, accounting, and return of the escrow. In that case, however, the Commission was considering circumstances in which an agent of a household-goods carrier held separate operating authority in its own name and was not otherwise affiliated (in a financial sense--rather than as a franchisee) with the principal carrier. [FN13]

The circumstances here are readily distinguishable. Because of the affiliation with Dart, we do not view Highway's escrow arrangement as being strictly for its own purposes. Rather, it is more appropriate to view Highway as maintaining the escrow fund to keep operational the equipment leased to Dart. Accordingly, Highway in effect is acting in the capacity of constructive agent and using the Maintenance Reserve Fund for the benefit of the constructive principal (Dart).

**7 We, thus, reject Dart's view that the Maintenance Reserve Fund does not constitute the carrier's own escrow fund within the meaning of the leasing regulations. In addition, we find that the terms of the Maintenance Reserve Fund arrangement are disclosed adequately within Dart's owner-operator agreement to satisfy the requirements of § 1057.12(i). [FN14] Dart's "Carrier Operating Agreement" explains the optional nature of any *711 withholding, and it is incumbent upon the drivers to designate the extent, if any, of such withholding on the addendum to their operating agreement with Dart. Only under these conditions--that are obviously consistent with the drivers' interests--does Dart deduct and remit payments to Highway's Maintenance Reserve Fund.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701                                                                                     Page 6
9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**


In summary, we cannot accept petitioner's view that its relationship with Highway is sufficiently at arm's length to place the equipment rental and maintenance fund deductions involved here outside the protective reach of the Commission's leasing regulation disclosure provisions at 49 C.F.R. Part 1057. At the same time, we find that the full-disclosure requirements of the Commission's leasing regulations are satisfied by Dart's "Independent Contractor Agreement" and the appended "Contractor Settlement Deduction Request." Together these documents reflect the entirely optional nature of the involved deductions and ensure that the independent drivers themselves affirmatively request and specify the amount of the withholding. Accordingly, this proceeding will be discontinued.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

COMMISSIONER WALDEN, concurring:

I concur in the decision because it faithfully construes the Commission's regulations. I write separately to add that, were I sitting in judgment on the wisdom of the rules themselves, I would be inclined to share the concern originally expressed by two Commissioners who dissented from the Commission's decisions in adopting these regulations: Lease and Interchange of Vehicles, 131 M.C.C. 286 (1978) (proposed rule) and 131 M.C.C. 141 (1979) (final rule).

In particular, I share the doubts expressed by Commissioner Murphy about whether the Commission has sufficient jurisdiction to regulate, to the degree reflected in the regulations, the contractual relationship between owner-operators and carriers. 131 M.C.C. at 322-24. With regard to the need for the provision requiring carriers that maintain an escrow fund to pay interest on the balance, 49 C.F.R. § 1057.12(k), the applicability of which is at issue in this case, I tend to agree with the dissenting statements of Commissioners Stafford, 131 M.C.C. at 319, and Murphy, 131 M.C.C. at 324. However, Dart did not raise either issue in this proceeding. [FN15]

*712 It is ordered:

1. The motion of Dart Transit Company to strike the reply of the Office of Compliance and Consumer Assistance is denied.

**8 2. This proceeding is discontinued.

3. This decision is effective on June 24, 1993.

By the Commission, Chairman McDonald, Vice Chairman Simmons, Commissioners Phillips, Philbin and Walden. Commissioner Walden concurred with a separate expression. Chairman McDonald dissented in the disposition of this proceeding. Vice Chairman Simmons agreed with the conclusion that Dart and its affiliate must comply with the leasing regulations disclosure regarding its equipment rental and maintenance fund deductions. On the other hand, Vice Chairman Simmons believes that the petitioner is not in compliance with those rules.

> FN1. By petition filed June 22, 1992, Dart moved to strike OCCA's reply on the basis that the procedural schedule does not provide for such a pleading. Because Dart relied only on its original petition and submitted no further comments (other than its response pleading), petitioner argues that there was no pleading to which OCCA could reply. In fact, the procedural schedule permitted all parties to reply to any matter raised in this proceeding. Dart already had filed its own reply before the due date for such pleadings. OCCA was not required to ignore that pleading in preparing its own reply. In any event, Dart's objections to OCCA's reply appear to go more toward the merits of the pleading, alleging that it "*** is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

full of unsupported and unwarranted accusations" (Dart Motion to Strike, at unnumbered at 2) and, thus, provide no basis for rejecting it on procedural grounds. Dart's motion to strike will be denied.

FN2. These drivers are identified by petitioner as independent contractors. Independent drivers often are known (at least colloquially) as "owner-operators," but the petition makes clear that drivers affected by the issues raised here are not (necessarily) the owners of the equipment they lease to petitioner. Although these independent drivers are identified as "lessors" of the equipment (vis-á-vis the carrier) in the Commission's leasing regulations, 49 C.F.R. § 1057.11(f) they in turn lease the equipment from Highway Sales, Inc.. Thus, for purposes of discussion in this proceeding it is the carrier that will be referred to as the "lessee" and the independent drivers as the "lessors." The lease between an independent driver and Highway will be referred to as the "equipment rental contract."

FN3. Highway is not a "subsidiary" of Dart. They are under common ownership, but each is a distinct legal entity. Dart concedes its common ownership with Highway and acknowledges the existence of some common officers, but also points to the entities' separate personnel, separate (although proximate) work areas, and separate profit centers. We will treat Highway and Dart as affiliated and need not resolve the degree of their affiliation here.

FN4. Dart indicates that Highway maintains this requirement in order to control its risks, because it can thus better keep track of the equipment and collect rental payments on a current basis.

FN5. Rather, Dart maintains, it remits these monies to Highway only at the specific requests of the independent drivers.

FN6. There was an initial warning letter on August 24, 1990, from the Minneapolis, MN, field office, and a follow-up letter on May 8, 1991, from the Central Regional Office in Chicago urging corrective action.

FN7. The warning letters point out that the second requirement of § 1057.12(i) provides:
The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments. [Emphasis added.]
The Regional Office thus adhered to the view (1) that Dart is making a "Lease Payment" deduction from the compensation it pays its independent drivers; (2) that the purpose of this deduction is collection by Dart of a vehicle rental payment due from the independent driver under a "Vehicle Lease Agreement" between the driver and Highway; and (3) that the equipment rental contract does give Dart the right to make vehicle rental payment deductions from the compensation Dart pays to the driver; but (4) that the lease does not specify the terms of that equipment rental contract as required by the regulations.

FN8. At the time of the initial survey of Dart's operations that precipitated the warning letters, the Regional Office found that Dart's leases with owner-operators; who leased equipment from Highway contained no authorization, either in the body or in an addendum, for Dart to deduct equipment lease payments for forwarding to Highway. In a September 17, 1990, letter responding to the initial warning letter, Dart stated that reference to equipment lease deductions had been inadvertently deleted in some of its contracts with owner-operators, but that this situation had since been rectified by including Addendum 2 in subsequent contracts.

FN9. The lease provisions regarding escrow funds are governed by 49 C.F.R. § 1057.12(k).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 I.C.C.2d 701                                                                                                    Page 8

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

**(Cite as: 9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.))**

FN10. 49 C.F.R. § 1057.12(i) (first sentence)

FN11. We also agree that Dart is not necessarily the "chief" financial beneficiary of the escrow fund. Highway's agreement with the independent drivers designates Dart, upon termination of the Highway agreement, as the potential recipient of monies remaining in the reserve maintenance fund to offset any amounts owed to Dart under the "Carrier Operating Agreement." Dart's legal interest in the fund is only a contingent, residual interest.
In view of this conclusion, we need not address Dart's proposal to waive its contingent rights under the existing leases and request Highway to delete such references in future agreements.

FN12. The fund is identified as a "Maintenance Reserve Fund" for the convenience of the parties, primarily because it is a commonly requested deduction authorization.

FN13. The agents in that situation were operating under a principal carrier's authority. Thus, the operations were legally those of the principal carrier, even though the independent drivers involved were employed under contract with the agent.

FN14. Section 1057.12(i) is intended to be all-inclusive and, thus, extends to matters other than equipment rental or purchase agreements. Other areas that the Commission has noted fall within the scope of the disclosure requirements include "washing of equipment, repair services, insurance, and so on." Lease and Interchange, supra, at 316. [Emphasis added.]

FN15. But see the comments filed May 13, 1992, by William J. Monheim, a practitioner, who wrote, 'It seems the real issue in this proceeding is whether or not those escrow and deduction regulations are still needed.'

9 I.C.C.2d 701, 1993 WL 220182 (I.C.C.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.