UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., ) ) ) Plaintiffs, ) ) v. ) ) UNITED VAN LINES, LLC, et al., ) ) Defendants. ) | No. 05 CV 10317 MLW |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS NON-MOTOR CARRIER DEFENDANTS**

Defendants UniGroup, Inc. ("UniGroup") and Vanliner Insurance Company ("Vanliner") respectfully submit the following Memorandum of Law in support of their Motion to Dismiss Non-Motor Carrier Defendants pursuant to Fed. R. Civ. P. 12(b)(6).[1]

**INTRODUCTION**

Each count of this putative class action lawsuit arises from alleged violations of the federal motor carrier leasing regulations codified at 49 C.F.R. Part 376 (the "leasing regulations"). *See* Compl. ¶¶ 28, 33-34, 38, 43, 48, 50, 52. Plaintiffs claim that written leases they entered into with independent local agents of defendant United Van Lines ("United"), a federally regulated motor carrier, do not comply in certain respects with leasing regulation requirements. However, those regulations do not, as a matter of law, apply to the two non-motor carrier defendants in this case, UniGroup, Inc. ("UniGroup") and Vanliner Insurance Company ("Vanliner"). Accordingly, all claims against UniGroup and Vanliner should be dismissed.

---

[1] Defendant UniGroup is concurrently moving to dismiss all claims against it for lack of personal jurisdiction. If its personal jurisdiction motion is not granted, then it joins in the present motion.

UniGroup is the parent holding company of defendant United, while defendant Vanliner is UniGroup's insurance subsidiary. *See* Compl. ¶¶ 9-10. Plaintiffs do not claim that either UniGroup or Vanliner is a motor carrier. *Id.* Nor does the Complaint contain any allegations connecting UniGroup or Vanliner to the federally regulated leases upon which all of plaintiffs' claims are based. Indeed, plaintiffs do not (and cannot) allege that UniGroup or Vanliner were ever parties to any such leases. Instead, plaintiffs seek to hold UniGroup and Vanliner liable solely because they happen to be affiliated with defendant United, the only motor carrier defendant in this case. *See* Compl. ¶12 ("United, Vanliner, and UniGroup, with their interlocking boards of directors and corporate officers, and with their common ownership, are affiliated entities and operate a seamless business enterprise").

However, the relevant federal statutes and regulations do not permit plaintiffs to impute the claimed regulatory noncompliance of defendant United to its non-motor carrier affiliates. To the contrary, the requirements imposed by the leasing regulations—and the statutes under which they were promulgated—are expressly limited to "motor carriers" who "perform [federally] authorized transportation" services in leased equipment. *See*, *e.g.*, 49 C.F.R. § 376.11.

As previously noted, plaintiffs concede that UniGroup and Vanliner are not motor carriers who conduct authorized transportation services. Nor do plaintiffs contend that United, which is a motor carrier, somehow used UniGroup or Vanliner to try to circumvent its compliance with applicable regulatory requirements. Nevertheless, and despite the fact that the leasing regulations apply only to motor carriers, plaintiffs improperly seek to lump all three defendants together in a legally baseless attempt to hale into court as many entities as possible.

Plaintiffs give no reason why the admittedly distinct corporate identities of the various defendants in this case should be disregarded, especially since neither UniGroup nor Vanliner

has ever entered into any regulated lease agreement with any plaintiff owner-operator. Indeed, plaintiffs do not allege, even in conclusory fashion, that defendants' corporate veils should be pierced. Accordingly, because UniGroup and Vanliner are not subject to the federal leasing regulations upon which plaintiffs' claims are premised, and did not engage in any regulated activity, all claims against them should be dismissed.

## ARGUMENT

UniGroup is a holding company with several operating subsidiaries, including United and Vanliner. [*See* Compl. ¶¶ 8-10]. Vanliner is an insurance company which provides a variety of insurance-related services, primarily to persons and entities the transportation industry. [*Id.* ¶ 9]. United, a federally regulated motor carrier, provides interstate transportation services in all fifty states through a network of independent local agents. [*Id.* ¶ 8]. Plaintiffs do not allege that either UniGroup or Vanliner operates as a motor carrier, or enters into lease agreements with any owner-operators.

Plaintiffs' Complaint asserts four counts of alleged regulatory noncompliance:

*Count I*— alleged undisclosed deductions from owner-operator compensation, in purported violation of 49 C.F.R. § 376.12(d) *[Compl. ¶¶ 33-34]*;

*Count II*— alleged failure to provide owner-operators with rated freight bills or similar documents, in purported violation of 49 C.F.R. § 376.12(g) *[Compl. ¶¶ 38-40]*;

*Count III*— alleged improper pass-through of public liability/property damage insurance costs to owner-operators, in purported violation of 49 C.F.R. § 376.12(j)(1) *[Compl. ¶ 43]*; and

*Count IV*— alleged failure to monitor and oversee the business practices of United's independent agents, in purported violation of 49 U.S.C. § 13907 and 49 C.F.R. § 376.12(m) *[Compl. ¶ 49]*.

However, by their express terms, the leasing regulations apply only to "motor carriers" who "perform [federally] authorized transportation services." Since it is undisputed that UniGroup and Vanliner are not motor carriers performing regulated transportation functions, plaintiffs' Complaint fails to state a cause of action against them upon which relief may be granted. Dismissal therefore, is both appropriate and necessary.

The starting point for determining which persons or entities are subject to the leasing regulations is the very first subsection of the regulations, entitled "Applicability:"

> The regulations in this part apply to the following **actions by motor carriers registered with the Secretary to transport property**:
>
> (a) **The leasing of equipment with which to perform transportation regulated by the Secretary.**

49 C.F.R. §376.1(a)(emphasis added).[2]

Next, the leasing regulations provide that an "**authorized carrier**[3] **may perform authorized transportation services in equipment it does not own**" only if, among other things, the carrier enters into "a written lease granting [the carrier] the use of the equipment and meeting the requirements contained in § 376.12." See 49 C.F. R. § 376.11(a)(emphasis added).

Finally, §376.12 specifies the provisions which must appear in the "written lease" required by the above-quoted § 376.11, and also states that "[t]he required lease provisions shall be adhered to and performed **by the authorized carrier**." 49 C.F.R. § 376.12 (emphasis added).

---

[2] Additional motor carrier "actions" subject to regulation are identified in § 376.1(b) and (c). However, no such actions are alleged by plaintiffs in this case, and hence those subsections are inapplicable.

[3] 49 C.F.R. § 376.2(a) provides that an "authorized carrier" is "[a] person or persons authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902."

The specific § 376.12 leasing regulation requirements at issue in this lawsuit are similarly limited to activities of "authorized carriers" who perform regulated transportation services in equipment they lease from third parties:

- 49 C.F.R. § 376.12(d), the subject of Count I of the Complaint, provides that "the amount to be paid **by the authorized carrier** for [leased] equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease" (emphasis added).

- 49 C.F.R. § 376.12(g), the subject of Count II, provides that "the lease must specify that **the authorized carrier** will give the lessor…a copy of the rated freight bill or a computer-generated document containing the same information….(emphasis added).

- 49 C.F.R. § 376.12(j)(l), the subject of Count III, provides that "[t]he lease shall clearly specify the legal obligation of **the authorized carrier** to maintain insurance coverage for the protection of the public….*** If the **authorized carrier** will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor" (emphasis added).

- 49 C.F.R. § 376.12(m), the subject of Count IV, provides that "[t]his paragraph applies to owners…whose equipment is used by an agent of an authorized carrier….In this situation, the **authorized carrier** is obligated to ensure that these owners receive all the rights and benefits due an owner under the leasing regulations…." (emphasis added).[4]

Finally, the private right of action plaintiffs seek to assert in this case can only be brought against motor carriers. According to the Complaint, plaintiffs' leasing regulation claims are "privately enforceable in federal court" pursuant to 49 U.S.C. § 14704(a)(1) and (2). *See* Compl. ¶ 1. However, section 14704(a)(1) provides that "[a] person injured because **a carrier**…does not obey an order of the Secretary…may bring a civil action for injunctive relief," while section

---

[4] Plaintiffs also purport to base Count IV on 49 C.F.R. § 13907. *See* Compl. ¶48. Like the leasing regulations, however, this federal statute is expressly limited to the activities of motor carriers: "Each **motor carrier** providing transportation of household goods shall be responsible for all acts or omissions of any of **its agents** which relate to the performance of household goods transportation services…." (emphasis added).

14704(a)(2) similarly provides that "**[a] carrier**…is liable for damages sustained by a person as a result of an act or omission **of that carrier**" (emphasis added).

Thus, by their express and unambiguous terms, all of the statutory and regulatory provisions upon which plaintiffs' lawsuit is based apply only to the actions of "authorized carriers" who are engaged in the "leasing of equipment with which to perform transportation" services. *See* 49 C.F.R. §376.1(a). Yet, as plaintiffs concede, UniGroup and Vanliner are not motor carriers engaged in any such regulated activity. On the contrary, their Complaint acknowledges that United is the only one of the three named defendants who is a "federally regulated motor carrier that provides transportation of property in interstate commerce…." *See* Compl. ¶8. Plaintiffs' concession in this regard mandates dismissal of their claims against non-motor carriers UniGroup and Vanliner.

Plaintiffs seek to stave off such dismissal by alleging that all three defendants are commonly owned. Specifically, plaintiffs assert as follows:

> Defendants, United, Vanliner and UniGroup, with their interlocking boards of directors and corporate officers, and with the common overlap, are affiliated entities and operate a seamless business enterprise. Many of the wrongs committed by Defendant United that are alleged in this complaint are carried out on United's behalf by officers and employees of Defendants UniGroup and Vanliner. United, as a regulated motor carrier, is responsible for the acts and omissions of its affiliated companies in violation of the federal Truth-In-Leasing regulations.

*See* Compl. ¶12.

However, mere allegations of common ownership and management are insufficient to render UniGroup and Vanliner liable for United's supposed noncompliance with the leasing regulations. As described above, those regulations—and the statutes under which they were promulgated—by their express terms do not apply to non-motor carrier entities such as UniGroup and Vanliner. The district court's ruling in *OOIDA v. Landstar System, Inc.*, No.

3:02-cv-1005, slip op. (M.D. Fla. June 4, 2004), a similar class action lawsuit, only reinforces this conclusion.[5] In *Landstar*, the court granted defendants' motion to dismiss federal leasing regulation claims against a motor carrier's corporate affiliates who—as in the present case—were not motor carriers and had never entered into regulated leases with owner-operators. As the court explained:

> Defendants claim that Plaintiffs have failed to state a claim upon which relief can be granted against the Subsidiaries, as Plaintiffs have not entered into lease agreements with those companies. **The Plaintiffs in this matter have not demonstrated to this Court the requirements of standing as to each of the Defendants**. [Citation omitted]. Moreover, this is not a case where a contractual obligation binds all defendants or where state or local law requires common action by the defendants. [Citation omitted]. **Therefore, this Court determines that the Subsidiaries should be dismissed from this action**.

*See* Ex. A, at 5 (emphasis added). The same reasoning and principles apply here, and also mandate dismissal of UniGroup and Vanliner as party defendants.

Plaintiffs may assert, as they have in other class actions against other motor carriers, that an administrative ruling of the former Interstate Commerce Commission ("ICC") in *Dart Transit Co.,* 9 ICC 2d 701 (ICC June 24, 1993), supports their attempt to join United's corporate affiliates in this lawsuit. *Dart Transit*, however, is inapposite. There, a motor carrier's equipment leasing affiliate "lease[d] motor-vehicle equipment to [the carrier's owner-operators], subject to a requirement that the equipment be used only in service for" the carrier. The owner-operators, in turn, then leased the same equipment back to the motor carrier. *Id*. at 702. As the ICC stressed, certain aspects of the contractual arrangements between the carrier's leasing affiliate and the owner-operators would have violated the leasing regulations if the affiliate had been an "authorized carrier." *Id.* at 702-06. Accordingly, said the ICC, since the leasing

---

[5] A copy of the *Landstar* decision is annexed to present motion as Ex. A.

regulations "do not permit [the <u>carrier</u>] to do what it maintains [its <u>affiliate</u>] should be allowed to do," the affiliate's lease agreements were properly subject to leasing regulation requirements. *Id.* at 706, 711.[6]

The narrow circumstances in which courts have permitted application of the leasing regulations to non-motor carriers have likewise involved circumstances where an "authorized carrier" would otherwise have been able to entirely circumvent compliance with regulatory requirements simply by utilizing affiliated non-carrier entities. For example, in *OOIDA v. Arctic Express, Inc.,* 87 F. Supp. 2d 820 (S.D. Ohio 2002), the court relied on *Dart Transit* in concluding that a defendant motor carrier's affiliate who entered into agreements with the carrier's drivers should be subject to the leasing regulations. *Id.* at 828-29. As the *Artic Express* court explained:

> The Commission's findings [in *Dart Transit*] prevent registered carriers from taking advantage of a potential loophole in the Act. **If this loophole is not closed**, **a registered carrier could create a non-registered business entity and thereby avoid the regulations promulgated under the Motor Carriers Act.**

*Id.* (emphasis added). *See also Bonkowski v. Z Transport, Inc.,* 2002 WL 1821673, *2 (N.D. Ill. Aug. 7, 2002)(Teaching of *Arctic Express* is that "affiliated companies which on one hand (the equipment owner) lease equipment <u>to</u> operators, and on the other hand (the authorized carrier) lease equipment <u>from</u> the operator, are collectively subject to the disclosure requirements of the regulations")(emphasis added).

Here, by contrast, neither of the two non-motor carrier defendants—UniGroup and Vanliner—leases any transportation or other equipment to or from any owner-operators. Moreover, plaintiffs do not claim that UniGroup or Vanliner are utilized by United as a means of

---

[6] A copy of the ICC's decision in *Dart Transit* is annexed to the present motion as Ex. B.

trying to circumvent the leasing regulations. Rather, UniGroup and Vanliner are simply separate companies performing wholly different business functions than United. Importantly, moreover, those functions—holding company and insurance company—are unrelated to owner-operator lease agreements and the leasing regulations.

In addition, the sole motor carrier defendant in this case—United—remains fully subject to the requirements of the leasing regulations. Indeed, it has never contended otherwise. Thus, plaintiffs can obtain complete relief from United if they are ultimately able to prove that United did not comply with applicable leasing regulation requirements.

Accordingly, there is no need, nor any legal basis, to join United's non-motor carrier affiliates as defendants in these proceedings. This is especially true since, as detailed above, all the relevant statutes and regulations apply solely to the activities of motor carriers. In short, this Court should follow the considered and correct ruling in *Landstar* that affiliates and subsidiaries of defendant motor carriers are not properly subject to suit on leasing regulation claims.

Finally, although plaintiffs do not seek to pierce defendants' corporate veils in this case, their allegations would not be sufficient to disregard defendants' separate corporate identities in any event. *See*, *e.g.*, *Rondout Valley Cent. School Dist. v. Coneco Corp.*, 339 F. Supp.2d 425, 442 (N.D.N.Y. 2004)(Massachusetts courts "have repeatedly held" that simply having overlapping corporate officers and directors is insufficient to warrant piercing corporate veil) (citing *Birbara v. Locke*, 99 F.3d 1233, 1234, 1240 (1st Cir. 1996)); *In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528, 551-52 (D. Md. 1996)("[The] allegation that various Honda entities use consolidated financial statements and have interlocking directorates, taken as true, would be insufficient to justify piercing corporate veil"); *Eisenbarth v. Equity Mut. Ins. Co.*, 189 S.W.2d 168, 171 (Mo. App. 1945)(interlocking directorates, close

association of several corporations, and domination of all related entities by a single corporate officer were insufficient to pierce the corporate veil).

## CONCLUSION

There is no legal basis for plaintiffs' attempt to sue non-motor carrier defendants UniGroup and Vanliner for defendant United's alleged noncompliance with the federal leasing regulations. As a matter of law, therefore, all claims against UniGroup and Vanliner should be dismissed with prejudice.

Respectfully submitted,

SALLY & FITCH LLP


By: /s/ *Jennifer E. Greaney*
Francis J. Sally (BBO # 439100)
Jennifer E. Greaney (BBO # 643337)
225 Franklin Street
Boston, Massachusetts 02110
(617) 542-5542 (phone)
(617) 542-1542 (facsimile)

THOMPSON COBURN LLP
David Wells (*pro hac vice* app. pending)
Michael J. Morris (*pro hac vice* app. pending)
Rebecca A. Pinto (*pro hac vice* app. pending)
One U.S. Bank Plaza
St. Louis, MO 63101
(314) 552-6000 (phone)
(314) 552-7000 (facsimile)

Attorneys for Defendants United Van Lines, LLC, Vanliner Insurance Company, and UniGroup, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Defendants' Motion to Dismiss Non-Motor Carrier Defendants has been served upon the following counsel of record this 2nd day of May, 2005, by U.S. Mail first class postage prepaid.

> Paul D. Cullen, Sr.
> David A. Cohen
> Susan Van Bell
> THE CULLEN LAW FIRM, PLLC
> 1101 30th Street, N.W., Suite 300
> Washington, DC 20007
>
> John A. Kiernan
> Kenneth H. Naide
> BONNER KIERNAN TREBACH & CROCIATE
> One Liberty Square, 6th Floor
> Boston, MA 02109
> (617) 426-3900

                                             /s/ *Jennifer E. Greaney*
                                             Jennifer E. Greaney