UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, et al., ) ) ) ) Plaintiffs, ) ) v. ) ) UNITED VAN LINES, LLC, et al., ) ) Defendants ) ) | No. 05 CV 10317 MLW |

PLAINTIFFS' OPPOSITION TO DEFENDANTS UNIGROUP, INC.'S
AND VANLINER INSURANCE COMPANY'S
MOTION TO DISMISS NON-MOTOR CARRIER DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 7 and Local Rule 7.1, Plaintiffs respectfully submit this Opposition to Defendants UniGroup, Inc.'s ("UniGroup") and Vanliner Insurance Company's ("Vanliner") Motion to Dismiss Non-Motor Carrier Defendants. In opposition to Defendants' Motion, Plaintiffs' submit the following:

I. INTRODUCTION

Defendants UniGroup and Vanliner, as affiliates of Defendant United, have directed, aided, and profited from United's violations of the Truth-in-Leasing regulations. Their request that this Court dismiss them from this action is based on an erroneous and overly restrictive interpretation of the cases that provide precedent for affiliates of motor carriers to be sued under the Motor Carriers Act.[1] The principles applied in those cases, that the purpose behind the Truth

---

[1] *Dart Transit Co.,* 9 I.C.C. 2d 701 (ICC June 24, 1993),1993 WL 220182 (I.C.C.) and *Owner-Operator Independent Drivers Association v. Arctic Express, Inc.,* 87 F.Supp.2d 820 (S.D. Ohio 2000).

in-Leasing regulations was to prevent abuses occasioned by collusion between a carrier and a third-party affiliate beneficiary, are equally applicable here.

## II. STANDARD OF REVIEW OF MOTION TO DISMISS

Defendants have brought their motion to dismiss under Fed. R. Civ. P. 12(b)(6). Such motions, for failure to state an actionable claim, "customarily evoke a generous standard of appraisal."[2] A motion to dismiss should be granted only if the complaint "shows no set of facts which could entitle the plaintiff to relief."[3] As noted by the First Circuit in *Resolution Trust Corporation v. Driscoll:*

> It is, of course, true that at the start of complex litigation a party may not have all the facts, so courts normally hesitate to dismiss under Fed.R.Civ.P. 12(b)(6) at the outset. At the start, a reasonable basis for belief and an outline of what one might reasonably hope to prove may suffice to permit discovery and ward off premature motions to dismiss.[4]

Applying these standards, Defendants' motion to dismiss should be denied.

## III. AFFILIATES OF MOTOR CARRIERS MAY BE SUED UNDER THE MOTOR CARRIER'S ACT.

Defendants correctly state that the Motor Carrier Act and accompanying regulations apply to "authorized carriers."[5] However, the decisions in *Dart Transit Co.*,[6] and *Owner-Operator Independent Drivers Association v. Arctic Express, Inc.*,[7] expanded the definition of "authorized carrier" to include, in some circumstances, affiliates of the carrier. The principles stated in those decisions, providing the rationale for including affiliates of motor carriers in lawsuits, are applicable in this instance, even though the factual situations are distinguishable.

---

[2] *Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir. 1998), citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1998) (emphasizing minimal nature of requirements imposed by Rule 12(b)(6)).
[3] *Gooley*, 851 F.2d at 514.
[4] 985 F.2d 44, 48 (1st Cir. 1993)
[5] *See* 49 U.S.C.A. § 14102; 49 C.F.R. 376.12
[6] 9 I.C.C. 2d 701 (ICC June 24, 1993), 1993 WL 220182 (I.C.C.)

In *Arctic*, plaintiffs entered into lease-purchase agreements with D & A Leasing, under which each plaintiff was provided a truck and required to make weekly rental payments as well as payments into a "maintenance fund" at the rate of nine cents per mile to D & A. 87 F.Supp.2d at 822. Plaintiffs also entered into lease agreements directly with Arctic, a DOT-regulated motor carrier, under which plaintiffs leased their services and equipment to Arctic. *Id.* Arctic deducted the rental and "maintenance fund" payments directly from plaintiffs' compensation on a weekly basis. *Id.* The maintenance fund balances were refundable if the lease ran its term, or if a plaintiff purchased the vehicle prior to expiration of the lease term. *Id.* The fund was not refundable if the lease was terminated before lease completion. *Id.* at 822-23. D & A and Arctic were under common ownership and control. *Id.*

In determining whether D & A was subject to the Truth-in-Leasing regulations, the *Arctic* court examined the decision of the Interstate Commerce Commission in *Dart Transit Company - Petition for Declaratory Order.*[8] In *Dart*, Dart Transit was a motor carrier which employed owner-operators. Highway Sales, Inc., leased motor vehicle equipment to owner-operators. Highway Sales and Dart "were under common ownership and had common officers, but the two companies were separate legal entities."[9]

---

[7] 87 F.Supp.2d 820 (S.D. Ohio 2000)
[8] 9 I.C.C.2d 701 (1993).
[9] *Arctic*, 87 F.Supp.2d at 827.

The ICC found Highway Sales and Dart were "affiliated" and that the affiliation of the companies was sufficient to trigger the disclosure requirements of the regulations.[10] The ICC found that "[i]t is clear that our regulations do not permit Dart to do itself what it maintains Highway should be allowed to do."[11] The ICC found that the purpose behind the Truth-in-Leasing regulations was to prevent "[a]buses or the potential for abuse occasioned by collusion between a carrier and the third-party beneficiary of an equipment purchase deduction."[12]

The *Arctic* court found that the ICC's interpretation was reasonable "*as it serves to bring entities 'affiliated' with registered motor carriers under the umbrella of the Act.*"[13] The court reasoned that "[t]he commission's findings prevent registered carriers from taking advantage of a potential loophole in the Act. If this loophole is not closed, a registered carrier could create a non-registered business entity and thereby avoid the regulations promulgated under the Motor Carriers Act."[14] The *Arctic* court concluded that

> Following *Dart*, D & A and Arctic's affiliation is enough to bring D & A under the provisions of the Motor Carriers Act. In *Dart*, Highway and Dart were under common ownership and had common officers; just as Arctic and D & A do in this case. As the Commission treated Highway and Dart as affiliates, so will this Court treat D & A and Arctic as affiliated in this case.[15]

Similarly, as set forth below, these principles apply to bring UniGroup and Vanliner within the provisions of the Motor Carriers Act as affiliates of United.[16]

---

[10] *Dart*, 9 I.C.C.2d 701, *13.
[11] *Id.* at *9.
[12] *Id.* at *13.
[13] 87 F.Supp.2d at 828 (emphasis added)
[14] *Arctic*, 87 F.Supp.2d at 828-29.
[15] *Id.* at 829.
[16] Defendants' reliance on *OOIDA v. Landstar System, Inc*, No. 3:02-cv-1005 (M.D. Fla.) and *Bonkowski v. Z Transport, Inc.*, 2002 WL 1821673 (N.D. Ill. 2002) is misplaced, as neither of those cases addressed the precise issue at hand. In *Landstar*, the court dismissed motor carrier entities because none of the named plaintiffs had entered into lease agreements with those carriers. The issue was purely one of the plaintiffs' standing to proceed against those carriers. In *Bonkowski*, the issue was whether the plaintiff

## IV. DEFENDANTS UNIGROUP AND VANLINER ARE SUBJECT TO THIS LAWSUIT AS AFFILIATES OF DEFENDANT UNITED.

Although *Dart* and *Arctic* involved factual situations in which the carrier's affiliate was a party to an equipment leasing agreement, the principles set forth in those decisions are not limited to that factual scenario. The purpose of the Truth-in-Leasing regulations, as noted by the ICC in *Dart*,[17] to prevent "[a]buses or the potential for abuse occasioned by collusion between a carrier and third party beneficiary" should not be limited to equipment purchase deductions, but is equally applicable to any abuses resulting in violations of the Truth-in-Leasing regulations as a result of collusion between a carrier and an affiliate.

Here, Plaintiffs have alleged that United has violated the Truth-in-Leasing regulations by failing to calculate owner-operator compensation properly (Count I); failing to provide documents relevant to compensation (Count II); unlawful pass-through of public liability and property damage ("PLPD") insurance (Count III); and failing to monitor and control the actions of its local agents (Count IV). The result of these practices is that owner-operators are wrongfully deprived of compensation because of unauthorized and undisclosed deductions from their share of revenue, and because they are forced to purchase insurance coverage that is unlawful and/or unnecessary.

---

"owned" his truck for purposes of application of the Truth-in-Leasing requirements. The court compared *Arctic*, noting that in *Arctic*, "there was no question as to whether plaintiffs were owner-operators of the equipment leased to Arctic Express, the authorized carrier." 2002 WL 1821673, * 2.

[17] 9 I.C.C.2d 701, *31

Plaintiffs have alleged that all three Defendants are "affiliated entities and operate a seamless business enterprise" and that "[m]any of the wrongs committed by Defendant United that are alleged in this complaint are carried out on United's behalf by officers and employees of Defendants UniGroup and Vanliner." Complaint, ¶ 12. The affiliations of UniGroup, Vanliner and United are so intertwined that actions of UniGroup and Vanliner, which direct and/or assist United's violations of the Truth-in-Leasing regulations, bring UniGroup and Vanliner within the coverage of the Motor Carriers Act. As in *Dart* and *Arctic*, UniGroup and Vanliner, in collusion with United, are beneficiaries to arrangements that violate the Truth-in-Leasing regulations.[18]

As alleged in the Complaint, UniGroup is exclusively owned and operated by local agents of United and another motor carrier subsidiary of UniGroup, Mayflower Transit, LLC. Complaint, ¶ 10. United and Mayflower agents are the sole stockholders of UniGroup. *Id.* Many of UniGroup's directors, who are local agents of United and Mayflower, also serve as directors of United. *Id.* Similarly, many of UniGroup's corporate officers serve as corporate officers of United. *Id.* Thus, policies and practices that increase United's profits also increase UniGroup's profits. United agents that own UniGroup stock have a vested interest in increasing the profits of UniGroup, separate and apart from the profits they make directly as United agents. The policies and practices at issue herein, by which owner operators are deprived of compensation that is unlawfully retained by United, directly benefit UniGroup.

---

[18] Defendants disingenuously assert that "UniGroup and Vanliner are simply separate companies performing wholly different business functions than United. . . . those functions - holding company and insurance company - are unrelated to owner-operator lease agreements and the leasing regulations." Motion p. 9. In fact, as is fully set forth in Plaintiffs' Opposition to UniGroup's Motion to Dismiss for Lack of Jurisdiction, UniGroup is not simply a holding company, but formulates and directs policies that are applicable to United agents. Moreover, the businesses of the three entities are so inter-related that the policies and practices at issue herein serve to increase the profits of all three. Thus, the claim that these companies are completely separate is, as a practical matter, simply wrong.

Similarly, Vanliner, another affiliate of United and UniGroup,[19] is a beneficiary of United's policies with respect to insurance coverage for owner-operators. As alleged in the Complaint, United satisfies its statutory responsibility for procuring public liability/property damage ("PL/PD") insurance through Vanliner and United then unlawfully transfers the cost of this responsibility to owner-operators. Complaint, ¶ 44, 45. United's insurance policies provide incentives for owner-operators to purchase insurance from Vanliner. Complaint ¶ 45. These policies serve to increase Vanliner's profits - and, in turn, UniGroup's profits - by requiring drivers to purchase policies and coverages that violate the Truth-in-Leasing regulations. In addition, these policies serve to minimize United's risk exposure under the United insurance coverage that is underwritten by Vanliner. Complaint ¶ 45.

Thus, the violations of the Truth-in-Leasing regulations that have been alleged have not been committed solely by United, but by United in concert with its affiliates UniGroup and Vanliner. As with the affiliated entities in *Dart* and *Arctic*, UniGroup and Vanliner are beneficiaries of United's violations of the Truth-in-Leasing regulations. The principles applied by the ICC in *Dart* and by the court in *Arctic Express* are applicable here to bring UniGroup and Vanliner within the coverage of the Motor Carriers Act.[20]

Defendants make an argument, unsupported by any authority, that there is "no need" to join UniGroup and Vanliner as defendants because Plaintiffs can obtain "complete relief" from United. Plaintiffs are unaware of any authority that would suggest that a plaintiff must chose only one of several potentially liable defendants to sue.

---

[19] Vanliner is a wholly-owned subsidiary of Vanliner Group, Inc., which is a wholly-owned subsidiary of UniGroup. Complaint ¶ 9.

[20] *See Arctic*, 87 F.Supp. 2d at 831 ("[A]s in *Dart*, the affiliation between D & A and Arctic is *sufficient to impute the agreement of one company to the other,* and to bring D & A under the coverage of the Motor Carriers Act").

## CONCLUSION

Applying the standard of review for a motion to dismiss, Defendants' motion should be denied. Plaintiffs' Complaint contains factual allegations that are sufficient to show that UniGroup and Vanliner, as affiliates of United, are within the coverage of the Motor Carriers Act and should be held responsible for their roles in the violations of the Truth-in-Leasing regulations. The applicable legal principles are straightforward and the facts fall squarely within those principles. Therefore, Plaintiffs do not believe oral argument is necessary, as requested by Defendants. Should the Court wish to hear oral argument, Plaintiffs would be please to appear before the Court.

Wherefore, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Non-Motor Carrier Defendants in its entirety.

Respectfully submitted,

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC., et al.

By: _____
John A. Kiernan (BBO #271020)
Kenneth H. Naide (BBO #643213)
**BONNER KIERNAN TREBACH & CROCIATA**
One Liberty Square, 6th Floor
Boston, MA. 02109
(617) 426-3900

Paul D. Cullen, Sr. (*pro hac vice* app. pending)
David A. Cohen (*pro hac vice* app. pending)
Susan Van Bell (*pro hac vice* app. pending)
***THE CULLEN LAW FIRM, PLLC***
1101 30th Street, N.W., Suite 300
Washington, DC 20007
Telephone: (202) 944-8600

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that copies of the foregoing Plaintiffs' Opposition to Defendants UniGroup, Inc.'s and Vanliner Insurance Company's Motion to Dismiss Non-Carrier Motor Defendants has been served upon the counsel of record listed below, this 15th day of June, 2005 by posting said copies in the United States mail, first class, postage prepaid to:

Francis J. Sally
Jennifer E. Greaney
Sally & Fitch, LLP
225 Franklin Street
Boston, Massachusett 02110

David Wells
Michael J. Morris
Rebecca A. Pinto
Thompson Coburn LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101

_____