UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 05 CV 10317 MLW |
| v. | ) ) | |
| UNITED VAN LINES, LLC, et al., | ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR LEAVE TO SUBMIT
SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR
RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

COME NOW Defendants United Van Lines, LLC, Vanliner Insurance Company, and UniGroup, Inc., and respectfully request leave to file supplemental authority in support of their pending Rule 12(B)(6) Motion to Dismiss Plaintiffs' Class Action Complaint. In support thereof, Defendants state as follows:

1. On May 2, 2005, Defendants filed their Rule 12(b)(6) Motion to Dismiss Plaintiffs' Class Action Complaint. Briefing on the Motion was completed on July 11, 2005.

2. Defendants' Motion to Dismiss includes a request for dismissal of Count III of the Complaint, wherein plaintiffs allege that under the federal truth-in-leasing regulations, it is unlawful for motor carriers such as defendant United Van Lines to pass through to their independent owner-operator drivers the cost of obtaining legally required liability insurance for such drivers' acts and omissions.

3. The very same insurance claim has been asserted by lead plaintiff OOIDA in a similar class action suit against a different motor carrier defendant, Mayflower Transit, LLC, in the U.S. District Court for the Southern District of Indiana. On September 27, 2005, the Court in

the *Mayflower* case rejected OOIDA's identical insurance claim as a matter of law.  See *OOIDA v. Mayflower Transit, Inc.*, No. 1:98-cv-0458-SEB-VSS, slip op. at 2-5 (S.D. Ind. Sept. 27, 2005).  A copy of the Court's decision in *Mayflower* is annexed hereto as Exhibit A.

4.  In dismissing OOIDA's liability insurance claim, the *Mayflower* Court ruled that the federal leasing regulations expressly authorize motor carriers (such as defendant United in this case) to charge their owner-operators for liability insurance:

> Looking at the plain language of the regulation at issue in this case [49 C.F.R. § 376.12(j)(1)], the first sentence recognizes that the carrier has a statutory obligation to maintain public liability insurance and requires the lease to acknowledge that obligation.  The second sentence recognizes that there are other types of relevant insurance, such as bobtail insurance, and requires that the lease specify whether the carrier or the lessor [driver] will be responsible for this "other insurance."  The third sentence recognizes that the carrier might choose to make a charge back for "any of this insurance" that it provides, and requires that the lease specify the amount of any such charge back.  As a matter of simple English, if the third sentence were intended to refer only to the "other insurance" discussed in the second sentence [as OOIDA contends], it would refer to charge backs for "any of this *other* insurance."  It does not.  The Court finds that the phrase "any of this insurance" unambiguously refers to all of the insurance discussed in subsection (j)(1), which includes "insurance coverage for the protection of the public."

*Id.* at 4 (emphasis in the original).  Thus, because "Congress has not prohibited motor carriers from passing the cost of public liability insurance along to its owner-operators," *id.* at 5, n.3, the Court in *Mayflower* ruled "as a matter of law that no violation of the applicable regulations occurred even assuming all of the facts asserted by the plaintiffs are true."  *Id.* at 3, n.2.

5.  OOIDA's insurance claim in *Mayflower* is identical to its pleaded Count III in the present case.  Further, the Court's recent disposition of that claim in *Mayflower* is the first such judicial decision in the country addressing this precise issue.

6.  Defendants respectfully submit that the Court's recent ruling in *Mayflower* is correct and persuasive precedent here.  Because the decision in *Mayflower* was issued after the parties hereto had completed their briefing on Defendants' Rule 12(b)(6) Motion to Dismiss

- 3 -

Plaintiffs' Class Action Complaint, Defendants respectfully request leave to bring this subsequent decision to the Court's attention.

        Respectfully submitted,

        THOMPSON COBURN LLP

        By: /s/ Michael J. Morris
        David Wells (*admitted pro hac vice*)
        Michael J. Morris (*admitted pro hac vice*)
        Rebecca A. Pinto (*admitted pro hac vice*)
        One U.S. Bank Plaza
        St. Louis, MO 63101
        (314) 552-6000 (phone)
        (314) 552-7000 (facsimile)

        SALLY & FITCH LLP
        Francis J. Sally (BBO # 439100)
        Jennifer E. Greaney (BBO # 643337)
        225 Franklin Street
        Boston, Massachusetts 02110
        (617) 542-5542 (phone)
        (617) 542-1542 (facsimile)

        Attorneys for Defendants United Van Lines, LLC,
        Vanliner Insurance Company, and UniGroup, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of October, 2005, the foregoing Motion for Leave to Submit Supplemental Authority in Support of Their Rule 12(b)(6) Motion to Dismiss Plaintiffs' Class Action Complaint was electronically filed with the Clerk of the Court using the CM/ECF system, which in turn forwarded the same to the following counsel of record:

> John A. Kiernan
> Kenneth H. Naide
> BONNER KIERNAN TREBACH & CROCIATE
> One Liberty Square, 6th Floor
> Boston, MA 02109
> (617) 426-3900

I further certify that on the same date, I sent a copy of the above-described filing, by U.S. Mail first class postage prepaid, to the following counsel of record:

> Paul D. Cullen, Sr.
> David A. Cohen
> Susan Van Bell
> THE CULLEN LAW FIRM, PLLC
> 1101 30th Street, N.W., Suite 300
> Washington, DC 20007

/s/ Michael J. Morris

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ENTERED
SEP 2 7 2005
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | |
|---|---|
| OWNER-OPERATORS INDEPENDENT DRIVERS ASSOCIATION, INC., et. al., <br><br> Plaintiffs, <br><br> vs. <br><br> MAYFLOWER TRANSIT, INC., <br><br> Defendant. | CAUSE NO. IP 98-458-C B/S |

## ENTRY REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

This case is before the Court on Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability. The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below.

### ISSUES PRESENTED

The Court has had several opportunities to summarize the background facts and allegations in this case, and will not do so again here. At issue in the instant motion is whether several alleged practices of Defendant Mayflower Transit, Inc. ("Mayflower") violated the Truth-in-Leasing regulations found at 49 C.F.R. Part 376 ("Leasing Regulations") to which Mayflower is subject as an authorized carrier under federal law. Specifically, the plaintiffs ask the Court to rule that:

EXHIBIT A

(1) Mayflower's deductions from owner-operator[1] compensation for the cost of its mandatory public liability/property damage insurance (hereinafter referred to as "public liability insurance") violated the Leasing Regulations;

(2) Mayflower's requirement that owner-operators obtain the public liability insurance through Mayflower violated the Leasing Regulations; and

(3) Mayflower's charge backs to owner-operator compensation for bobtail and occupational/accident insurance violated the Leasing Regulations to the extent that they exceeded the actual premiums for such insurance.

In addition, the plaintiffs seek summary judgment on the issue of whether this third practice constituted a breach of Mayflower's contracts with the owner-operators.

## DISCUSSION

### Deductions for Public Liability Insurance

The first issue raised in the plaintiffs' motion is whether Mayflower's alleged

---

[1] The term "owner-operator" as used in this Entry refers to independent owner-operator truck drivers who lease their trucks and driving services to Mayflower, either by contracting directly with Mayflower or with one of Mayflower's authorized agents.

2

practice[2] of passing the cost of public liability insurance on to its owner-operators violated the Leasing Regulations. The specific regulation at issue is 49 C.F.R. § 376.12(j)(1), which provides:

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

The parties vigorously disagree regarding the meaning of this regulation. The plaintiffs argue that by its plain language the regulation prohibits a carrier from making a charge back to the lessor for public liability insurance, while Mayflower argues that the plain language of the regulation authorizes such a charge back.

The process we are to follow when determining the meaning of a statute or regulation is well established:

> We begin our inquiry into the proper interpretation of the statute and regulation by determining whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.

---

[2]Because we determine as a matter of law that no violation of the applicable regulations occurred even assuming all of the facts asserted by the plaintiffs are true, we need not address Mayflower's argument that the evidence of record does not support the plaintiffs' factual assertions.

3

*Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 710 -11 (7th Cir. 2005) (citations and internal quotation marks omitted). Looking at the plain language of the regulation at issue in this case, the first sentence recognizes that the carrier has a statutory obligation to maintain public liability insurance and requires the lease to acknowledge that obligation. The second sentence recognizes that there are other types of relevant insurance, such as bobtail insurance, and requires that the lease specify whether the carrier or the lessor will be responsible for providing this "other insurance." The third sentence recognizes that the carrier might choose to make a charge back for "any of this insurance" that it provides, and requires that the lease specify the amount of any such charge back. As a matter of simple English, if the third sentence were intended to refer only to the "other insurance" discussed in the second sentence, it would refer to charge backs for "any of this *other* insurance." It does not. The Court finds that the phrase "any of this insurance" unambiguously refers to all of the insurance discussed in subsection (j)(1), which includes "insurance coverage for the protection of the public."

The plaintiffs argue that this reading of the regulation is impermissible because it would render the first sentence meaningless. Again, we disagree. The carrier is required by statute to maintain public liability insurance. The purpose of the first sentence is to require the lease to acknowledge that obligation, presumably to ensure that both the carrier and the lessor are aware of it and that the terms of the lease do not contradict it. Unlike public liability insurance, the carrier is not required by law to maintain any other type of insurance; hence, the second sentence requires that the lease specify which party will be responsible for providing any other insurance. The

4

plaintiffs conflate the terms "maintain" and "bear the cost of," but the two are not synonymous. In fact, the statute does not specify who must bear the cost[3] of either the public liability insurance or any other type of insurance. This is recognized by the third sentence of the regulation, which requires the lease to specify whether the carrier will charge back to (shift the burden of bearing the cost of) the lessor any insurance that it will maintain, either because it is statutorily required to maintain it or simply agrees to maintain it under the lease.[4]

### Requirement That Public Liability Insurance Be Obtained Through Mayflower

The Leasing Regulations provide:

---

[3]In other words, Congress has determined that it is important that public liability insurance is maintained, and Congress further has determined that the best way to ensure that occurs is to require motor carriers to maintain it as a requirement of their registration as motor carriers. However, Congress has not prohibited motor carriers from passing the cost of public liability insurance along to its owner-operators. Therefore, the plaintiffs' argument that the statute and the regulation clearly prohibit a motor carrier from *delegating the responsibility for* public liability insurance to owner-operators is correct, but their suggestion that merely passing the cost of the insurance along to the owner-operators is the equivalent of delegating the responsibility for maintaining the insurance is incorrect.

[4]Because we find the language of the regulation to be unambiguous, we do not address the plaintiffs' arguments based upon the legislative history of the Interstate Commerce Act and the last antecedent rule of statutory construction. *See Connecticut Nat'l Bank v. Germain* 503 U.S. 249, 254, (1992) (noting that the first canon of statutory construction is that "courts must presume that a legislature says in a statute what it means and means in a statute what is says there," and that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete").

5

> Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

49 C.F.R. § 376.12(i). The plaintiffs argue that Mayflower has violated this prohibition against "forced purchases." This argument is without merit. The owner-operators were not required to purchase public liability insurance from Mayflower; rather, they were subject to clearly permissible charge backs for insurance that Mayflower was statutorily required to maintain. This is a critical distinction. According to the Surface Transportation Board, the purpose of § 376.12(i) is to protect owner-operators from carriers who might seek to profit by requiring owner-operators to purchase equipment, etc., from the carrier or from companies affiliated with the carrier:

> Owner-operators express concern about deductions made by equipment sales or finance companies on behalf of affiliated carriers and deductions made by carriers on behalf of affiliated finance or equipment rental/purchase companies. . . . [The regulation] also addresses the concern of owner-operators about excess profits from the sale or rental of products which are tied to leasing arrangements. Lessors will be free to purchase fuel, rent trailers, obtain insurance, and so on, from whatever source they so choose.

*Lease and Interchange of Vehicles*, 129 M.C.C. 700, 729-30 (1978). These concerns are not implicated by the practice about which the plaintiffs complain in this case.

6

## Chargebacks for Bobtail and Occupational/Accident Insurance

The plaintiffs argue that they are entitled to summary judgment on their claim that Mayflower violated various of the Leasing Regulations by the manner in which it charged owner-operators for bobtail insurance and occupational/accident insurance. This argument is easily disposed of. Both what the relevant lease provisions were[5] and whether Mayflower complied with those provisions are contested issues of fact, making the issue of whether Mayflower's actions violated the Leasing Regulations inappropriate for summary judgment. *See* Federal Rule of Civil Procedure 56(c) (Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.").

## Breach of Contract

The Court by separate entry this date has decertified the class as it relates to the plaintiffs' breach of contract claims. Accordingly, the motion for summary judgment on the breach of contract claims as it relates to the class must be denied. The individual plaintiffs are free to file motions for summary judgment addressing the specific contracts that they had with Mayflower or one of its authorized agents.

---

[5] The plaintiffs have submitted evidence regarding only a few of the contracts at issue.

CONCLUSION

For the reasons set forth above, the plaintiffs have failed to demonstrate that they are entitled to summary judgment on any of their claims in this case. Accordingly, their motion for partial summary judgment is **DENIED** in its entirety.

ENTERED this 26th day of September 2005.

*Sarah Evans Barker*
Sarah Evans Barker, Judge
United States District Court
Southern District of Indiana

Copies to:

David Carr
Ice Miller
One American Square
Box 82001
Indianapolis, IN 46282

Paul D. Cullen Sr.
The Cullen Law Firm PLLC
1101 30th Street NW
Suite 300
Washington, DC 20007

James A. Calderwood
Zuckert Scoutt & Rasenberger
888 Seventeenth St. N.W.
Washington, DC 20006-3939

David C. Campbell
Bingham McHale LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900

David Wells
Thompson Coburn LLP
One Firstar Plaza
St Louis, MO 63101