UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED VAN LINES, LLC, et al.,<br><br>    Defendants. | No. 05 CV 10317 MLW |

**SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

In accordance with this Court's Order dated January 13, 2006, defendants submit this Supplemental Memorandum to address the issue of witness convenience consistent with this Court's analysis in *Brant Point Corporation v. Poetzsch*, 671 F. Supp. 2 (D. Mass. 1987).

## DISCUSSION

A.   Convenience Of Witness Factors

As this Court noted in *Brant Point*, "[t]he convenience of the witnesses is '[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a).'" *id.* at 3 (citation omitted). In this case, an examination of plaintiffs' allegations and the relevant facts confirms that:

- All individuals with knowledge of defendants' relevant actions and practices work and reside in the St. Louis, Missouri metropolitan area;

- None of the persons with knowledge of defendants' actions and practices are located in Massachusetts;

- All individuals with knowledge of the actions and practices of lead plaintiff Owner-Operator Independent Drivers Association ("OOIDA") work and reside in or near OOIDA's headquarters in Grain Valley, Missouri;

- Neither OOIDA, its executives and employees, or any of the three named individual plaintiffs work or reside in Massachusetts;

- None of the parties (or their respective officers or employees) can be compelled to give testimony in Massachusetts, while nearly all such witnesses can be compelled to testify in Missouri; and

- To the extent there are witnesses who do not reside in or near Missouri, such persons are dispersed throughout the United States. The convenience to such persons, if anything, further supports transfer to a centralized forum, such as the Eastern District of Missouri.

In sum, and as described further below, the convenience of the witnesses strongly supports defendants' pending motion to transfer pursuant to 28 U.S.C. §1404.

B.   The Parties In This Case Are Centered In Missouri

The lead plaintiff in case, OOIDA, is a nationwide trade association of independent truckers. *See* Compl. ¶4. OOIDA is a Missouri corporation, and its sole place of business is located in Grain Valley, Missouri. *Id*. OOIDA's executives and employees, therefore, reside in or around Grain Valley, Missouri.

OOIDA's central role in this litigation—including its involvement in all class certification, discovery, and trial proceedings—is plain. As OOIDA itself has noted, "OOIDA has brought more than twenty class actions against motor carriers all over the United States, in many jurisdictions." *See 6/15/05 Pls.' Opp. To Defendants' Mot. to Transfer Venue*, at 6.[1]

As established by defendants' supplemental affidavit accompanying this Memorandum, lead defendant United Van Lines ("United") operates its property transportation business through a nationwide network of nearly five hundred independently-owned and -operated agencies. *See*

---

[1] The individual named plaintiffs in this case (Norman Pelletier, Matthew Bullard, and Dennis Lee) are fairly viewed as nominal parties only, with OOIDA being truly responsible for litigating plaintiffs' case. In any event, none of the three individual plaintiffs are Massachusetts residents, and only one of them (Pelletier, a resident of New Hampshire) even lives in the same **region** as this Court. *See* Comp. ¶¶5-7.

*Ex. A, Supp. Aff. Of J. Schmelzle, at ¶¶6-7*).  United, however, also contracts directly with independent drivers, which are referred to as "contract truckmen."  *Id. at ¶8*.

Only thirteen (or less than 3%) of United's hundreds of independent agents are located in Massachusetts.  *Ex. A, ¶7*.  Similarly, out of the approximately 5,830 persons qualified to serve as United drivers, only 98 (or less than 2%) are Massachusetts residents.  *Id. at ¶12*.

All substantive dealings between United and its contract truckmen occur in Missouri.  *Ex. A, ¶8*.  Specifically, all lease agreements between United and its drivers are negotiated and executed in Missouri, and are governed by Missouri law.  *Id. at ¶9*.  United's recruiting department is also located in Missouri, and when a potential contract truckman expresses interest in working for United, he or she is evaluated at United's headquarters in Missouri and attends an orientation program in Missouri.  *Id*.  And after a contract truckman has leased his or her equipment and services to United, all future communications between the parties occur in or from Missouri.  *Id*.  All of defendants' representatives with knowledge of United's business relationship and dealings with its contract truckmen are located in Missouri.

Before any owner-operator is allowed to haul a load under United's interstate operating authority, and regardless of whether he or she has contracted with United or with one of its agents, such driver must submit a written application to United in Missouri.  *Ex. A, ¶15*.  United's employees in Missouri then conduct a safety-related background check of the applicant's prior motor carrier work history, and otherwise evaluate his or her qualifications at United's headquarters in Missouri.  *Id*.  All United witnesses with knowledge of this process are located in Fenton, Missouri.

Further, every load an owner-operator hauls under United's authority is registered at United's headquarters in Missouri in order to confirm proper pricing, customer billing, handling

of claims, and other matters relating to the load. *Ex. A, ¶13*. Regardless of whether a shipper places the order directly with United, or through one of its agents in any of the fifty states, every load under United's authority is logged into the United computer system in Missouri. *Id*.

In addition, United's contract truckmen receive all dispatch instructions from Missouri, and they send all documents and information regarding their loads to United in Missouri. *Ex. A, ¶9*. Furthermore, all United continental loads—whether transported by a contract truckman or an agent van operator—are dispatched to the driver by a dispatcher located in Missouri. *Id. at ¶11*. Once again, therefore, all of defendants' witnesses with knowledge of these matters work and reside in the St. Louis, Missouri metropolitan area. *Id. at ¶¶ 18-19*.

    C.    Both Sides' Witnesses With Knowledge Of OOIDA's Pleaded Claims Work And/Or Reside In Missouri

In Count I of their Complaint, styled "Failure to Calculate Owner-Operator Compensation Properly," plaintiffs allege that defendant United, from its headquarters in Missouri, makes certain allegedly unauthorized deductions from owner-operator compensation. *See* Compl. ¶¶ 28, 31-32. Plaintiffs further allege that "United [in Missouri] calculates driver compensation for all drivers under lease to United or to United's local agents using its own computers, and United [in Missouri] reports its calculations to local agents who rely on those calculations when making compensation to drivers." *Id.* at ¶ 29.

Defendants' supplemental affidavit accompanying this Memorandum establishes that every settlement of every United shipment is processed by United in Missouri. *Ex. A, ¶¶13-14*. The resulting compensation is then sent by United in Missouri to the contract truckman or to the local United agents which have provided service for that load. *Id*. All settlements and all distributions of shipper revenues are thus handled and processed in Missouri in the first instance. *Id*.

Accordingly, those persons with knowledge of the processing and/or calculation of revenue received from United loads—the very heart of Count I—are employees of United and all work at United's corporate headquarters in Fenton, Missouri. *Ex. A, ¶¶ 14, 16-19*. The following United employees, among many others, have knowledge regarding United's revenue and compensation practices:

- Ralph Pregler, a vice president in United's financial services department in Fenton, Missouri; and

- Mickey Bertino, director of accounting, located in Fenton, Missouri.

*Id.* at *¶ 16*. All other defendant witnesses with knowledge of United's revenue and accounting practices also reside and work in or around St. Louis, Missouri. *Id. at ¶18*.

In Count II of their Complaint, plaintiffs allege that United and its independent agents unlawfully failed to provide owner-operators with rated freight bills or similar documentation pertinent to owner-operator compensation. *See* Compl. ¶ 39. All defendants' representatives with knowledge of rated freight bills are employed at United's headquarters in Fenton, Missouri. *Ex. A., ¶¶ 8, 9, 16-19*. The following United employees, among others, have such knowledge:

- Wayne Campbell, a director working in United's household goods operations department in Fenton, Missouri;

- Tom Duwel, vice president in United's domestic operations department, located in Fenton, Missouri;

- Don Flater, director of fleet resources, located in Fenton, Missouri; and

- David Pile, a senior director with responsibility for special products, operations, and services, located in Fenton, Missouri.

*Id. at ¶ 16*. All other persons with knowledge of United's practices relating to rated freight bills and similar topics also work and reside in the St. Louis, Missouri metropolitan area. *Id. at ¶18*.

Non-parties with knowledge about the practices of United's independent agents as to rated freight bills include (1) employees of those agents, and (2) the owner-operators with whom those agents have contracted. Both the agents and the owner-operators are widely dispersed nationwide, with only a very small percentage located in Massachusetts. As previously noted, less than three percent of United agents are located in Massachusetts, while less than two percent of United-qualified drivers list a Massachusetts residence. *Ex. A, ¶¶6-7, 12*. Thus, the great majority of witnesses with knowledge of freight bill practices in the United system are located in Missouri, with the remaining witnesses dispersed throughout all fifty states.

In Count III of their Complaint, plaintiffs claim that the federal leasing regulations codified at 49 C.F.R. Part 376 supposedly prohibit United from charging owner-operators for legally required liability insurance. *See* Compl. ¶46.[2]

All persons with knowledge of defendants' insurance practices are employees of United or its corporate affiliates, including Vanliner Insurance Company ("Vanliner") and UniGroup, Inc. ("UniGroup"). All such persons work at defendants' headquarters in Fenton, Missouri. *Ex. A ¶¶4-5, 18-19*. Those persons include, among others, the following:

- Gale Preston, Vanliner's chief operating officer, located in Fenton, Missouri; and

- Joan Schulz, an employee familiar with defendants' insurance administration procedures, located in Fenton, Missouri.

---

[2] Plaintiffs' claim in this regard was recently rejected, as a matter of law, by the court adjudicating OOIDA's identical insurance claim against United's sister motor carrier, Mayflower Transit. *See 9/27/05 Entry Regarding for Partial Summary Judgment* in *OOIDA, et al. v. Mayflower Transit*, No. 98-0458-SEB-VSS (S.D. Ind.), at 3-5. Defendants provided this Court with a copy of the *Mayflower Transit* decision on October 5, 2005, as supplemental authority supporting their pending motion to dismiss.

*Id. at ¶ 16*. All other persons with knowledge of defendants' insurance practices also work and reside in the St. Louis, Missouri metropolitan area. *Id. at ¶ 18.*[3]

In Count IV of their Complaint, styled "Failure to Monitor and Control the Actions of Local Agents," plaintiffs vaguely demand an "accounting" of United's alleged failure to adequately "monitor and oversee the business practices" of its agents. Compl. ¶¶ 49, 52. Although the content and scope of this "claim" are nebulous at best, all persons with relevant knowledge would necessarily be United employees located in Fenton, Missouri, or employees of the agents in all fifty states. *Ex. A, ¶¶ 6-7, 18-19*.

Due to the vague nature of Count IV, it is difficult to speculate which United representatives might be most knowledgeable. However, it is likely that Joe Schmelzle, United's senior director of customer service and agency development in Fenton, Missouri would have some knowledge of facts relevant to this claim. Moreover, as is the case with plaintiffs' other claims, all other potential defendants' witnesses with knowledge of the business relationship between United and its agents are also located in the St. Louis, Missouri region.

Finally, lead plaintiff OOIDA is also located in Missouri, as are all its officers and employees. While it is difficult for defendants to predict which OOIDA employees may have the most discoverable knowledge, the following OOIDA executives appear to be likely candidates: Jim Johnston, OOIDA's president; Todd Spencer, OOIDA's executive vice president; and Karen England, director of OOIDA's Business Services group. On information and belief, all of these individuals work at OOIDA's headquarters in Grain Valley, Missouri.

---

[3] To the extent plaintiffs seek to challenge the insurance practices of United's independent agents, persons with knowledge of such matters would include the agents' employees and the owner-operators with whom such agents have contracted. As previously noted, both categories of these persons are dispersed throughout all fifty states, with only a very small percentage in Massachusetts. *Ex. A ¶¶ 6-7, 12*.

D.  The Parties' Witnesses Are Subject To Subpoena In Missouri, But Not In Massachusetts

As described above, the witnesses associated with the three defendants, and with lead plaintiff OOIDA, all reside and/or work in Missouri. All such witnesses, therefore, are subject to compulsory attendance at trial in the Eastern District of Missouri.

Conversely, virtually all if not all of the parties' witnesses are beyond this Court's subpoena power. Under Fed.R.Civ.P. 45(b)(2), subpoenas generally may only be served "at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, [or] trial."

Here, none of the parties or their witnesses are Massachusetts residents, and in fact the great majority of both sides' witnesses work or reside in Missouri. It is likely, therefore, that none of the most important and knowledgeable witnesses in this case can be compelled to testify in this Court. *See, e.g., Smith v. Chason*, 1997 WL 298254, *9 n. 4 (D. Mass. Apr. 10, 1997)("The 100-mile limitation on service of subpoena applies to parties as well as non-parties"); *Jamsport Entertainment, LLC v. Paradama Productions, Inc.*, 2005 WL 14917, *1 (N.D. Ill. Jan. 3, 2005)(quashing Illinois trial subpoena directed to defendant's vice president who resided and worked in Texas).

Thus, the general availability of the Court's subpoena power in the Eastern District of Missouri—in contrast with this Court, located hundreds of miles away from where the vast majority of witnesses reside—further confirms that Missouri is a far more suitable and convenient forum for the parties and their witnesses. Accordingly, defendants' motion to transfer should be granted.

- 9 -

**CONCLUSION**

All or virtually all of the parties' knowledgeable witnesses in this case work or reside in Missouri, and none of them have any connection with Massachusetts. In addition, while the vast majority of both sides' witnesses cannot be compelled to give testimony in Massachusetts, most of them are subject to subpoena in Missouri. Finally, to the extent that non-party witnesses must be consulted, such persons (especially United's independent agents and the owner-operators with whom they have contracted) are dispersed throughout the United States, with only a tiny percentage located in Massachusetts. The convenience of such non-party witnesses, if anything, further supports transfer to a centralized forum such as the Eastern District of Missouri.

For all the foregoing reasons, and for the reasons set forth in defendants' original moving papers (filed on May 2, 2005, July 11, 2005 and August 22, 2005, respectively), defendants respectfully request this Court to transfer this action to the United States District Court for the Eastern District of Missouri.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Michael J. Morris
    David Wells
    Michael J. Morris
    Rebecca A. Pinto
    One U.S. Bank Plaza
    St. Louis, MO 63101
    (314) 552-6000 (phone)
    (314) 552-7000 (facsimile)

    SALLY & FITCH LLP

    Francis J. Sally (BBO # 439100)
    Jennifer E. Greaney (BBO # 643337)
    225 Franklin Street
    Boston, Massachusetts 02110
    (617) 542-5542 (phone)
    (617) 542-1542 (facsimile)

    Attorneys for Defendants United Van Lines, LLC,
    Vanliner Insurance Company, and UniGroup, Inc.

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on this 3rd day of February, 2006, the foregoing Supplemental Memorandum in Further Support of Defendants' Motion to Transfer Venue Pursuant to 28 U. S. C. §1404 was electronically filed with the Clerk of the Court using the CM/ECF system, which in turn forwarded the same to the following counsel of record:

    Paul D. Cullen, Sr.
    David A. Cohen
    Susan Van Bell
    THE CULLEN LAW FIRM, PLLC
    1101 30th Street, N.W., Suite 300
    Washington, DC 20007

    John A. Kiernan
    Kenneth H. Naide
    BONNER KIERNAN TREBACH & CROCIATE
    One Liberty Square, 6th Floor
    Boston, MA 02109
    (617) 426-3900

                                     /s/ Michael J. Morris

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED VAN LINES, LLC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)  No. 05 CV 10317 MLW<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL AFFIDAVIT OF JOSEPH SCHMELZLE

Joseph Schmelzle, being first duly sworn, deposes and states as follows:

1. I am a Senior Director of defendant UniGroup, Inc. ("UniGroup"). I have been employed by UniGroup since 1992.

2. I am over the age of 21, and am competent to submit this affidavit in further support of Defendants' Motion to Transfer Venue. The facts stated herein are based upon my personal knowledge and/or examination of business records kept in the ordinary course of business, and are true and correct to the best of my knowledge, information, and belief.

3. I have reviewed plaintiffs' Complaint in the present case, *OOIDA, Inc., et al. v. United Van Lines, LLC, et al.*, No. 05 CV 10317 MLW, in which plaintiffs complain about several of defendants' alleged practices concerning the calculation of owner-operator compensation, the provision of rated freight bills and similar documents to owner-operators, the pass-through of PL/PD insurance costs to owner-operators, and defendants' alleged failure to adequately monitor the leasing relationship between independent local agents of United Van Lines and their respective owner-operators.

4. Defendants UniGroup, Vanliner Insurance Company ("Vanliner"), and United Van Lines, LLC ("United") are all organized under Missouri law. All three companies, moreover, maintain their headquarters (and only place of business) at One Premier Drive, Fenton, Missouri 63026.[1]

5. All officers and employees of UniGroup and United work at corporate headquarters in Missouri, and all reside in or around the St. Louis, Missouri metropolitan area. Similarly, all Vanliner officers and employees, except for one employee located in California, work and reside in or around the St. Louis metropolitan area. None of these companies employ any residents of Massachusetts or maintain any offices or corporate records in Massachusetts.

6. United is a federally regulated motor carrier which provides property transportation services under the authority of the U.S. Department of Transportation, and conducts business in all fifty states. United primarily operates through a network of approximately five hundred local independent agencies.

7. All United agents are independent business entities and are separately owned, managed, and operated. United's agents are located, and conduct business in, each of the fifty states. Only thirteen full service United agencies (comprised of eleven different agent entities) are located in Massachusetts. Thus, less than three percent of all independently-owned United agencies are located in Massachusetts.

8. In addition to operating through its nationwide network of agents, United also contracts directly with independent owner-operators (referred to as "contract truckmen"). All

---

[1] In my initial Affidavit in support of defendants' motion to transfer, filed with the Court on May 2, 2005, I correctly stated that Vanliner was at that time organized under Arizona law. Effective November 1, 2005, however, Vanliner (like UniGroup and United) became a Missouri corporation. Vanliner's headquarters and sole place of business has at all relevant times remained in Fenton, Missouri.

substantive dealings between United and its contract truckmen occur in Missouri.

9.  Specifically, all lease agreements entered into between United and its contract truckmen are negotiated and executed in Missouri, and are governed by Missouri law. United's recruiting department is located in Missouri, and when a potential contract truckman expresses an interest in working for United, the contract truckman is evaluated at United's Missouri headquarters and attends an orientation program in Missouri. After a contract truckman leases his equipment and services to United, all future communications and transactions between the parties occur in or from Missouri. Among other things, contract truckmen receive dispatch instructions from Missouri and they send all information and documents relating to completed loads to United's headquarters in Missouri.

10.  The trucks and drivers furnished by United's independent agents are either (a) vehicles owned by the agent and driven by employees of that agent, or (b) vehicles and driving services which the agents have leased from independent owner-operators. An agent's fleet will generally be used to haul both interstate loads under United's federal operating authority, and intrastate and local loads under the agent's non-federal operating authorities.

11.  All continental loads transported under United's operating authority are assigned to the drivers by a dispatcher in Missouri. Regional loads may be dispatched by a United agent. However, all moves under United's operating authority must be registered with United in Missouri.

12.  There are approximately 5,830 individuals who are presently qualified to transport United loads. Of those 5,830 persons, only 98—or less than two percent of the total United driver population—list a Massachusetts residence.

13.  Every load an owner-operator hauls under United's operating authority is

registered in United's computer system in Missouri in order to arrange for proper pricing, customer billing, handling of claims, and other matters relating to the load. Regardless of whether a shipper's order comes directly to United or through one of its independent agents, the load—before it can be shipped under United's operating authority—must be logged into the United computer system in Missouri.

14. Every settlement for every load is processed in Missouri, and the corresponding compensation is sent by United in Missouri to either (a) its own contract truckmen, or (b) the independent agent which provided service for the load. Thus, all settlements and all distributions of shipper revenues are handled and processed in Missouri in the first instance.

15. Before an owner-operator is allowed to haul a United load, United obtains a completed application, conducts a safety-related background check of the applicant's prior motor carrier work history, and otherwise evaluates the applicant's qualifications at its headquarters in Missouri to ensure that the owner-operator meets federal driver safety qualification requirements.

16. The following individuals have knowledge of the following United, UniGroup, and/or Vanliner business practices which appear to be pertinent to the allegations asserted by the plaintiffs in this case:

| NAME/BUSINESS UNIT OF EMPLOYEE | LOCATION OF EMPLOYEE | SUBJECT MATTER OF WHICH EMPLOYEE HAS KNOWLEDGE |
|---|---|---|
| Ralph Pregler Financial Services | Fenton, Missouri | Revenue Accounting |
| Mickey Bertino Financial Services | Fenton, Missouri | Revenue Accounting |
| Wayne Campbell, Household Goods operations systems | Fenton, Missouri | Interaction between drivers and United |
| Tom Duwel Operations | Fenton, Missouri | Interaction between drivers and United |
| Don Flater | Fenton, Missouri | Contract Truckmen |

| Fleet Resources | | |
|---|---|---|
| David Pile<br>Special Products, Operations | Fenton, Missouri | Operations and owner-operators generally |
| Joe Schmelzle<br>Agency development | Fenton, Missouri | Interaction between United and independent agents |
| Gale Preston, Vanliner insurance practices | Fenton, Missouri | Owner-Operator Insurance |
| Joan Schulz, Vanliner insurance administration | Fenton, Missouri | Owner-Operator Insurance |
| Dave Bengston, UniGroup safety and loss control | Fenton, Missouri | Qualification of Drivers |
| Gerry Eschmann, United safety and loss control | Fenton, Missouri | Qualification of Drivers |
| Page Dunnegan, operating tax and fleet registration | Fenton, Missouri | Tax and fleet registration matters |
| Randy Poppell, information services | Fenton, Missouri | Electronic operating systems and data |

17. All of the individuals listed in paragraph 16 reside and work in the St. Louis, Missouri metropolitan area. None of them reside or work in Massachusetts. Requiring these persons to travel to Massachusetts for hearings and/or trials would disrupt their work schedules and business responsibilities.

18. All United, UniGroup, and Vanliner departments and business units in which all of the individuals listed in paragraph 16 work are located in Missouri. Thus, to the extent that other persons in any of those departments and business units might have knowledge of matters pertinent to this lawsuit, all such persons (whether junior or senior to the individuals listed in paragraph 16) also reside and work in the St. Louis, Missouri metropolitan area. No such persons reside or work in Massachusetts.

19. In sum, all of defendants' witnesses with knowledge of the United, UniGroup, and Vanliner actions and business practices which are at issue in this case work and reside in the St. Louis, Missouri metropolitan area. To the best of my knowledge, no such witnesses reside or

work in Massachusetts. Furthermore, all of United's, UniGroup's, and Vanliner's documents and relevant business records are located in Missouri; none are located in Massachusetts.

    20.    Further affiant sayeth not.

_____
JOSEPH SCHMELZLE

STATE OF MISSOURI    )
    ) SS.
COUNTY OF ST. LOUIS    )

On this 1st day of ~~January~~ February, 2006, before me appeared Joseph Schmelzle, to me personally known, who being by me duly sworn, did state that he is authorized to make this affidavit, and that the statements made herein are true to the best of his knowledge, information and belief.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix my official seal in the County and State aforesaid, the date and year written above.

_____
Notary Public

(SEAL)

My Commission Expires:

5-18-08

LAUREL E. SOYKIN
Notary Public - Notary Seal
STATE OF MISSOURI
Jefferson County
My Commission Expires May 18, 2008

- 6 -